HIGGINS, Justice.
 

 The accused was charged with breaking and entering the hotel room of Mrs. Charles Weigand in the nighttime, on March 17, 1941, with felonious intent to steal. The jury found him guilty as charged and he was sentenced to serve a term of ten years in the State Penitentiary
 
 *111
 
 at hard labor. He appealed and relies upon two bills of exception taken to the ruling of the trial court in admitting both an oral and a written confession of the defendant over his objections. He contends that the State failed to show that the confessions were free and voluntary but that, on the contrary, the defendant proved that they were obtained from him after a severe beating by the police and because of the promise of a lieutenant of the police force that the accused’s common-law wife would not be prosecuted.
 

 The record shows that the defendant was registered at the St. Charles Hotel with his common-law wife, Diana Bangs; that at about 9:30 o’clock p.m. on March 17, 1941, he went to the Roosevelt Hotel and checked a large leather brief case and a package wrapped in a St. Charles Hotel laundry bag with the baggage porter there. Prior thereto Mrs. Charles Weigand, who was registered in room No. 950 of the Roosevelt Hotel, complained of the loss of a silver fox cape valued at $350 and an R. C. A. portable radio valued at $20, which were taken from her room during her absence between 6 o’clock and 9 o’clock p.m. on March 17, 1941. After receiving the baggage checked by the accused, the baggage porter, Harold Saucier, noticed a small amount of fur protruding through the snap lock on the brief case, and, having previously received a report that a fur cape was stolen from Mrs. Weigand’s room, he opened the brief case and then •called Lieutenant Joseph Maes, a detective of the New Orleans Police Department assigned to the Roosevelt Hotel. They also opened the laundry bag and found a lady’s cloth coat with a fur collar in it. The detective then took the articles to Mrs. Weigand’s room where she identified them as her property. The packages were put back in the baggage room and about 12 o’clock that same night, the actused returned to the Roosevelt Hotel with the baggage checks and claimed the two packages which were returned to his possession. Thereupon, he was arrested by police officers Miller and Kanzig and taken by them and Detective Maes to Room 252 of the Roosevelt Hotel, where the police maintain an office, and was questioned by them.
 

 The police officers testified that when the accused was confronted with the evidence they had against him, he made a voluntary verbal statement that he had entered the room of Mrs. Weigand and had taken the articles therefrom, first, to his room in the St. Charles Hotel and then, subsequently, had them checked at the Roosevelt Hotel and that he was staying at the St. Charles Hotel with his common-law wife, Diana Bangs. They stated that at the time the accused was arrested his left eye was black and that he had a bruise on the left side of his face. They also said they placed the defendant in the Fourth Precinct instead of the First Precinct because the latter was congested with negro prisoners and the Fourth Precinct had better facilities.
 

 The defendant testified that Lieutenant Maes, while having him under arrest in room No. 252 of the Roosevelt Hotel, knocked him down and severely kicked him in the body and that as a result of a brutal beating he made the statement or the con
 
 *112
 
 fession which was untrue and given only to avoid further punishment. He further testified that he was kept in the room about two hours before he was taken to the Fourth Precinct at the corner of St. Philip and Dorgenois Sts., where he was held until the following day when he was taken by the police in an automobile to different places in the City. He stated that on March 19, 1941, when he gave a written confession to the police, he was told by Lieutenant Maes, before being taken to the First Precinct Station, where he made the written statement, that if he did not do so he would be further physically punished and that Diana Bangs, his common-law wife, would be prosecuted. As a result of the threat and promise, he says he made and signed the written statement which was untrue.
 

 When the accused was on the witness stand, the defense counsel, on cross-examination with reference to his previous convictions and sentences for violations of the law in other states, admitted that he was the same party covered by those records showing convictions and sentences for larceny and forgery.
 

 Desk Sergeant William Simo, who wrote the defendant’s statement, testified that the accused at no time complained of having been mistreated and that he dictated the statement which the officer wrote down on the typewriter and that it was voluntarily made and signed.
 

 The police officers explained that on the day following the arrest of the accused,. they took him to the Bienville and the Pontchartrain Apartments in an automobile because there had been burglaries committed in those hotels and the accused had in his room at the time of his arrest a number of articles which he had admitted taking from hotels.
 

 Albert W. Habeeb, -a senior medical student at Tulane University, who served at the Parish Prison for two years in assisting Dr. Cole, Coroner of the Parish of Orleans, in taking care of the sick inmates, testified that on March 20, 1941, when the accused was admitted to the Parish Prison, he found several areas of skin surface that, showed the result of injuries on the back, backside and front portion of his body above the navel and on the left side of his chest and that the bruises were more pronounced on the left side and under the left arm. He also said that defendant’s left eye and the left side of his face were bruised. He described the bruises as heavy.
 

 It was admitted by the State that if Dr. Trischel, also a senior medical student at Tulane University, also employed at the Parish Prison, were called to testify, he would have made substantially the same statement as that of Dr. Habeeb.
 

 Doctor Habeeb, in testifying, did not say that the accused ever complained to him that he had been mistreated or beaten by the police at the time of his arrest or thereafter. As far as the record is concerned, it shows that he made no complaint thereof to any one until the time of the-trial. The police testified that when they questioned the accused about his black eye, he stated that he would rather not discuss-
 
 *113
 
 the matter and that they pursued the subject no further.
 

 While it is true the accused was shown to have received injuries to his body and eye, the only evidence tending to connect the police officers therewith is the testimony of the accused. He not only admitted that he had a previous criminal record but that he had been drinking heavily on the'evening and night of the alleged offense and had visited a certain gambling resort.
 

 Our learned brother below, in his per curiam, states that he very carefully considered the evidence and particularly noted the demeanor of the witnesses on the stand and that he was impressed with the frankness and the truthfulness of the police officers.
 

 He further states that the accused’s injuries were not'the result of any mistreatment by the police but were received in some other way prior to his arrest.
 

 The case, in its last analysis, is one involving the veracity of the witnesses and the trial judge has accepted as true the statements of the officers and has rejected the testimony of the accused after giving the matter very careful and deliberate consideration.
 

 This case is similar to that of State v. Calloway, 196 La. 496, 199 So. 403, 406, where we said:
 

 “ * * * Where the record refutes the accusations of the defendant against the police and the ruling of the trial judge is therefore supported by the evidence, we should not annul the verdict and sentence simply on the ground of suspicion or general principles, alone. It will not do to say that because an accused repudiates -his confession as having been made through promises, inducements, threats, coercion or force that it is inadmissible where the proof shows it was freely and voluntarily given, for his confession would seldom, if ever, be admitted in evidence against him.”
 

 See, also, State v. Mistretta, 192 La. 489, 188 So. 150, and State v. Cannon, 184 La. 514, 166 So. 485; Cannon v. State of Louisiana, 299 U.S. 503, 57 S.Ct. 13, 81 L.Ed. 373.
 

 This court will not hesitate to set aside a verdict of the jury and a sentence of the court when the evidence shows that the accused was mistreated in order to obtain, a confession or that it was induced through promise or duress. State v. Henry, 196 La. 217, 198 So. 910. The law is clear that the constitutional rights of an accused not to be compelled to give evidence against himself must be respected by police officers who have in their charge prisoners accused of violating the law. In the instant case, the overwhelming proof is that the rights of the prisoner were in no way violated and the evidence indicates that his confessions resulted from the fact that he was apprehended with strong evidence against him and sought to protect his common-law wife from being" incarcerated and prosecuted.
 

 For the reasons assigned, the verdict of the jury and the sentence of the court are affirmed.