HIGGINS, Justice.
 

 The accused, Wilbert Bergeron and Harold S. Holmes, were charged with, tried' for, and convicted of the theft of an automobile valued in excess of $100, and were each sentenced to serve a term, as second' offenders, of ten years in the State Penitentiary. They appealed and rely upon four bills of exception to have the conviction and sentence annulled.
 

 Bill of exception No. 1 was reserved to-the ruling of the trial judge in admitting-in evidence the oral and written confessions of both accused. It is contended by them that the evidence showed the confessions were obtained through fear, punishment, and duress and, therefore, were inadmissible. The several police officers who* made the investigation and arrests testified' that when the accused were confronted’ with the overwhelming evidence that had', been gathered against them, apparently realizing that it was useless to deny their participation in the crime, they freely and voluntarily confessed their guilt and their narration of what had occurred was reduced to writing and the respective state-
 
 *733
 
 •merits were signed by them. The police officers deny that any mental or physical compulsion was used- or that any promises or threats were made.
 

 On the other hand, the defendants testified that Bergeron and Hector Vicknair, another man implicated in the theft, were severely beaten by being punched and whipped with a rubber hose. Holmes states that when he was apprised of what happened to Vicknair and Bergeron, through fear, he confessed and signed the statement under threats that the same thing would happen to him. Vicknair did not testify in the case, because a severance was granted to him.
 

 The evidence shows conclusively that a Ford two door sedan automobile was ■stolen in New Orleans and another car of the same type was stolen in Monroe, Louisiana. Bergeron was arrested in New Orleans when the police noticed that the car which was stolen in Monroe was parked in a suspicious manner on the street and Bergeron and two young women companions were approaching it. The police stopped their car near the stolen automobile and stood a distance away. Through ■error, Bergeron went to the officers’ car, which was identical in every respect with the Ford car, and when the police asked bim if it was his car, he failed to answer and immediately started walking away, whereupon he was apprehended. In the ■car there was found a .45 caliber revolver and a lot of clothing, which was stolen in ■Ouachita Parish. It was only after Bergeron was confronted with Vicknair (who was also placed under arrest later in the bay) that he signified his willingness to talk. Holmes was arrested at a tourist camp at McComb, Mississippi, the same night, the information as to his whereabouts being furnished by one of the young women who was arrested with Bergeron. Next to -the cabin where Holmes was sleeping, the police found the automobile which was stolen in New Orleans and upon searching it, they found a sawed-off shot gun. Holmes was arrested, in the cabin, by the Mississippi police officers and the New Orleans detectives, who telephoned the police at McComb, Mississippi, asking for their official assistance and cooperation. The officers found a .45 caliber automatic pistol fully loaded and some shot gun shells in Holmes’ luggage in the room. On the stolen automobile there had been fixed an improvised switch, because in stealing the car the thieves had broken the ignition switch lock and “jumped” the wires to start the motor.
 

 Holmes testified that he hitch-hiked his way from New Orleans to McComb, Mississippi, with a salesman, who was on his way to St. Louis, Missouri, and that the stranger whose name was Osborne left the car at the tourist court. He states ■that no one knew that he was leaving New Orleans or where he was located, and that the salesman unexpectedly remained over in McComb, Mississippi. This story is entirely irreconcilable with the fact that the young woman was able unerringly to tell the police where Holmes was and that he had the other stolen automobile.
 

 On the return to New Orleans, the police had difficulty in operating the stolen automobile, due to the defective impro
 
 *735
 
 vised switch but the car ran smoothly after Holmes instructed them how to operate it. This further indicates that the police officers were telling the truth and that Holmes was misrepresenting the facts.
 

 Holmes also accuses the Mississippi and Louisiana police officers of placing the loaded pistol and shot gun shells among his effects in his room. This is an .incredible story and is in no way supported by any other evidence.
 

 The State flatly contradicted Holmes’ statement about hitch-hiking with a salesman named Osborne by showing he had used the alias Harold Osborne and that no such party as the described salesman had stopped at the tourist court in McComb.
 

 Bergeron testified that he was beaten by the police in the Auto Theft Bureau located on the ground floor of the Criminal Court Building. The State positively showed that this office was being continuously used by the public and that judges, attorneys, officials, police jurors, and witnesses constantly passed in front of the doors of the office. Notwithstanding this fact, the defendants were unable to produce any witness who heard any outcries during the three days that Bergeron stated he was severely whipped from twenty minutes to a half hour at a time. Furthermore, he was unable to show any bruises and if he had been punched, kicked and beaten with a rubber hose as badly as he states, there would .have been some marks as evidence of such treatment.
 

 The State also proved that Holmes, Bergeron, and Vicknair knew each other while in the Louisiana State Penitentiary where they were confined after each was convicted of previous theft crimes, respectively. The stolen property in the Ford automobile that Bergeron had in New Orleans, as well as the fact that both Holmes and Bergeron had fire arms with them, further tends to affect their credibility.
 

 The trial judge in a lengthy per curiam analyzed in detail the evidence and the reasons why he disbelieved the defendants’ and believed the police officers’ testimony to be true, and, after a careful review of the entire record, we think his conclusion that the State had successfully shown that the confessions were free and voluntary is correct.
 

 Bills of exception Nos. 2 and 3 present the identical issue of whether oi not the confession made by Holmes to the police officers in the automobile while returning from McComb, Mississippi, to New Orleans, is inadmissible for the reason that he was handcuffed at the time. The contention is made that under these circumstances, the confession was obtained through duress.
 

 In State v. White, 156 La. 770, 101 So. 136, 142, the Court stated:
 

 “No threats were made against defendant, nor was any violence used against him, nor was there any inducement of any kind offered him, to obtain the statement or confession; but the statement was made voluntarily. True, it was made while defendant was under arrest and while he was shackled; but the fact that it was so made does not of itself make it involun
 
 *737
 
 tary, or otherwise render it inadmissible as evidence. State v. McGuire, 146 La. 49, 83 So. 374. It is also true that the statement was made in response to a question propounded to defendant, and after he had been questioned to some extent concerning his supposed connection with the homicide; but the fact that he was so questioned, and made the statement -in response to one of the questions propounded to him, does not affect the admissibility of the statement as evidence against him. State v. Berry, 50 La.Ann. 1309, 24 So. 329; State v. Hogan, 117 La. 863, 42 So. 352. The fact that the deputy, to whom defendant made the statement, was armed at the time it was made, as was also the deputy who was driving the automobile, does not render it. inadmissible, in view of the affirmative proof adduced that no threats were made against defendant, and that the officers in charge of him did not intimidate him in any manner.”
 

 In State v. McGuire, 146 La. 49, 50, 83 So. 374, the Court held:
 

 “* * * The admission of the confessions in evidence was objected to on the ground that they were made while the accused was handcuffed and in jail, and without any warning having been given him that whatever he might say would be used against him on his trial. That because of these reasons a confession, otherwise free and voluntary, is not inadmissible, is well settled.”
 

 In State v. Seminary, 165 La. 67, 115 So. 370, this Court held that an oral confession made voluntarily in answer to a question propounded by an officer of the law while the defendant was under arrest was not inadmissible under Article 1, section 11 of the Constitution of this State of 1921.
 

 Bill of exception No. 4 was reserved to the judge’s action in overruling the motion for a new trial. The motion for a new trial is simply a resume of the three aforesaid bills of exception, which we have already considered and held to be without merit. Consequently, this bill presents nothing further for the Court to consider.
 

 For the reasons assigned, the convictions and sentences appealed from are affirmed.
 

 ODOM, J., absent.