FRUGÉ, Justice.
 

 The defendant, Dale Smith Simpson, who was tried for murder, convicted, and sentenced to be electrocuted, is appealing from the conviction and sentence.
 

 
 *219
 
 During the course of the trial the defendant reserved fifty-three bills of exception. First we will take up the bills which have been briefed and argued on this appeal, discussing them singly or in groups as the dictates of clarity and convenience direct.
 

 Bill of Exception No. 1 was reserved to the court’s refusal to grant a continuance of file pleadings. On September 22, 1948, ■when counsel for the defendant were appointed, they were informed that they had until October 4, 1948, to withdraw the plea of not guilty previously entered and file further pleadings. On October 4, 1948, the time was extended to October 6, 1948, and on October 6, 1948, it was again extended to October 7, 1948. The ruling complained of was made on Octoher 7. In the motion for a continuance counsel for the defendant asserted their belief that they would soon be able to locate witnesses and evidence attesting to the insanity of the accused, both present and as of the date of the alleged crime, and requested the -court to postpone the arraignment of the defendant for a reasonable length of time during which they hoped to be able to produce these witnesses and with their support seek the appointment of a lunacy commission. The motion was accompanied by several exhibits in the form of letters and telegrams from various relatives of the defendant.
 

 The motion and exhibits show no more than a hope that evidence of insanity would ever be produced, and, as a matter of fact, no such evidence was produced during the course of the trial. In his per curiam the trial judge states that he had anticipated this development and had taken pains to observe the defendant and question those who were in constant contact with defendant, regarding his sanity, and had concluded that the defendant was absolutely normal. The motion was directed to the sound discretion of the trial judge and we see no abuse of that discretion in the judge’s refusal to grant the motion. Article 321, Code of Criminal Procedure.
 

 Bill of Exception No. 2 complains of the ruling of the trial judge on defendant’s motion for a bill of particulars. The only requested information which the bill of particulars did not furnish was that requested in paragraph -III, (b) and (c) of defendant’s motion, as follows:
 

 “b. Whether or not the statement or alleged confession of your defendant or the statement or alleged confession of his co-defendant was placed before the grand jury for its consideration, and
 

 “c. Such other memoranda and data, both written and verbal that went before the grand jury, that were connected directly or indirectly with the alleged statements or confessions of your defendant and his co-defendant.”
 

 The proper function of a bill of particulars is to inform the accused in greater detail of the nature of the crime of which he is charged. Articles 235 and 288 of the Code of Criminal Procedure. State
 
 *221
 
 v. Davis, 208 La. 954, 966, 23 So.2d 801; State v. Varando, 208 La. 319, 380, 23 So.2d 106. That it may he used as a device for ascertaining the nature of the evidence produced at the hearing of the grand jury is certainly a novel proposition and one unsupported hy authority. The ruling of the trial judge is correct.
 

 Bill of Exception No. 3 is taken in •connection with defendant’s prayer for •oyer. The language of the prayer for oyer is so vague and general that it is difficult to tell exactly what counsel expected the •court to order produced. But from counsel’s argument in support of this and other •connected bills we take it that he entertains the hope that this court will extend the ruling laid down in State v. Dorsey, 207 La. 928, 22 So.2d 273, 285, to include all “statements” of the accused, be they written •or in the mind of a witness and be they in the nature of a confession or not; whether .they are a statement by the accused or simply contained or referred to in a statement by a witness. In Dorsey’s case this court held that the accused was entitled .to a pre-trial view of a written confession .alleged to have been made by the accused. However, anticipating the argument presented by counsel in the instant case the ■court said:
 

 “It is not our intention to overrule the prior jurisprudence of this State, and particularly the various cases .cited by counsel for the State, in each of which defendant \was denied pre-trial inspection of written confession^ of codefendants, written statements of witnesses, or police reports in the hands of a sheriff, police department, or district attorney, and we do not overrule these cases.”
 

 . In State v. Mattio, 212 La. 284, 31 So.2d 801, the court again specifically stated that the rule of the Dorsey Case applied only to the written statements of the accused himself. We hold that all that the defendant was entitled to receive in response to the prayer for oyer was the written confession of the defendant. Actually the court (as stated in its per curiam) in order to make certain that it complied with the rule laid down in Dorsey’s case ordered t le district attorney to furnish copies of (1) all statements made by defendant and taken down and transcribed and (2) all police reports that recited that defendant made statements (meaning we are informed in the per curiam, statements that were in the nature of admissions or confessions.'’ ' The district attorney complied, thereby placing the defendant in a more advantageous position than he was entitled to bo and he could not have been prejudiced.
 

 Bills of Exception Numbers 11, 19, 20, 21, 22, 23, and 25 will be taken up now, as they are interrelated with the bill just discussed. These bills represent the consistent objections of counsel to any reference by direct testimony or otherwise to any statements attributed to Simpson by Detective Tardo, who was an eye witness to the crime, other than the one statement
 
 *223
 
 which was disclosed in answer to the prayer for oyer. (In the answer to the prayer for oyer it was disclosed that Detective Tardo in his police report had quoted Simpson as saying “Keep driving as if nothing happened. I just shot Nick.” This was properly included in the answer, in view of the judge’s ruling, as being in the nature of an admission.) The sole argument in support of these bills is that all statements of the accused should have been disclosed in the answer to the prayer for oyer and that not having been disclosed they must be excluded from the case. Our ruling on Bill of Exception No. 3 disposes of this argument. None of the statements referred to were in the nature of a confession, and there was no reason for their being disclosed in answer to the prayer for oyer.
 

 Bills of Exception Numbers 4 and 6 were reserved to the court’s overruling counsel’s motion to have various witnesses summoned in order to show that the defendant was held incommunicado from the time of his arrest until he was supposed to have confessed; thereby showing, we take it, that the grand jury received other than legal evidence. Counsel’s avowed purpose in seeking this testimony was to perpetuate it in connection with the motion for a bill of particulars. As we have said, the motion for a bill of particulars was properly denied and these bills must fall with it.
 

 Bill of Exception No. 5 was reserved to the trial judge’s ruling on the motion' to quash, and presents three questions for decision. First, was the trial judge correct in refusing to hold a hearing on the nature and legality of the evidence which went before the grand jury? This court has' answered the question in the affirmative. State v. Dallao, 187 La. 392, 175 So. 4, and cases there cited. Article 213 of the Code of Criminal Procedure is no more than a direction to the grand jury that it must limit itself in its investigations to ' the consideration of legal evidence. That article may not be used as authority for forcing the trial judge into a review of the proceedings before the grand jury in which the evidence which was produced will be subjected to all of the multiple objections which have evolved for the protection of the defendant when he is actually being tried. Second, is the indictment which charged that Dale Smith Simpson and Harold L. Miller “each” etc., fatally defective by reason of the use of the word “each?” It simply charges that they each did the same things which are thereafter charged. The case is easily distinguished from State v. Pinsonat, 188 La. 334, 177 So. 67, cited by counsel in the motion to quash. In that case the fact charged against joint defendants was stated in the singular and the court very properly held that the indictment was fatally defective. It could not be determined to which accused the crime was to be attributed. Here the use of the word “each” makes it clear that the fact charged applies to each defendant named. The third question is does an indictment charging the accused with the:
 
 *225
 
 crime of murder charge him with a crime “within legal intendment?” Inasmuch as the crime of murder has been described and denounced by the legislature, we must hold that he is so charged. There is no merit in the bill.
 

 Bill of Exception No.
 
 7
 
 complains of the court’s refusal to appoint a lunacy commission. The appointment of a lunacy commission rests in the discretion of the trial judge and we find no abuse of that discretion here. The exhibits introduced with this motion totally fail to disclose any evidence of insanity on the part of the accused. The ruling complained of is correct. State v. Bessar, 213 La. 299, 34 So.2d 785, and cases there cited. This ruling also disposes of Bill of Exception No. 8 which is no more than a reiteration of Bill of- Exception of No. 7.
 

 Bill of Exception No. 9 is taken to the court’s directing Dr. C. Grenes Cole, Parish Coroner, to observe the defendant and investigate his sanity. In his per curiam to Bill of Exception No. 7 the court makes it plain that his appointment of Dr. Cole was not in any way regarded by him as a substitute for a lunacy commission. The court still did not believe there was any basis for a lunacy commission but simply appointed Dr. Cole in an effort to still the clamoring of the defense for an examination by a psychiatrist. We fail to see how this could have prejudiced the rights of the defendant.
 

 Bill of Exception No. 10 is reserved to the overruling of a motion for a continuance which was made on October 27, 1948, the morning the case went to trial. This bill presents the same question for review as was presented by Bill of Exception No. 1 and our ruling is the same. We might note here that this case did not go to trial until thirty-five days after the appointment of counsel to represent the defendant and counsel were informed of the trial date when they were appointed. This allowed ample time for the preparation of the defense.
 

 Bill of Exception No. 12 was reserved when the district attorney in delivering his opening statement read the definition of murder as defined in Section 1 of Article 30 of the Criminal Code. The district attorney took this means of explaining to the jury the nature of the charge as he was required to do under Article 333 of the Code of Criminal Procedure. It is counsel’s position that- by giving the jury the bare definition as set out in the code the district attorney prejudiced the rights of the defendant, for the jury did not have the benefit of the jurisprudence on the subject or of the various defenses provided by the code. We cannot agree with counsel. The purpose here was to give the jury an idea of the nature of the charge against the accused and this we think the district attorney did. Certainly before the jury retired they were aware that all of the ramifications and re
 
 *227
 
 finements of the law on the subject were to be taken from the judge’s charge. There is no merit to this bill.
 

 Bill of Exception No. 15 was reserved to testimony given by a witness for the state on direct examination as follows:
 

 “Q. I understand you requested to return to New Orleans with Chief Scheuring?
 

 “A. Yes, and I talked to two men that they had in custody and Simpson told me he had killed a man.”
 

 Counsel for the defendant objected and asked for a mistrial and the court ruled as follows:
 

 “By the Court: Court instructs jury to disregard statement and Court disregards request for mistrial.”
 

 ■ [15] Counsel reserved this bill. It .is conceded that the answer was not solicited by the district attorney and it is not suggested that the district attorney is in any way responsible for its having been given. Under these circumstances the ruling of the trial judge was proper. State v. Goodwin, 189 La. 443, 179 So. 591; State v. Wall, 167 La. 413, 119 So. 410..
 

 When the state offered Simpson’s written confession in evidence the defense objected on the ground that the proper predicate had not been laid. The objection was overruled and counsel for the defense reserved Bill of Exception No. 16. The defendant surrendered on the morning of September 7, 1948, and was taken to the Donaldsonville jail. There he with his companion, Miller, was delivered to the New Orleans police at about noon of the same day and brought back to police headquarters in New Orleans. They were kept there from the time that they arrived until they gave their confessions on the afternoon of September 8, 1948, and signed them on the afternoon of September 9, 1948. The state introduced several police officers, including Chief of Detective Scheuring, also two assistant district attorneys, a newspaper man, and a stenographer who, among them, accounted for every minute of defendant’s time from the moment he was delivered to the New Orleans police until the confession was given and ' signed. They all testified that to their knowledge the defendant was not mistreated or offered any rewards or inducements and never showed any signs of mistreatment. The defendant himself admits that he was very well treated except that just before he gave the confession he was cursed, beaten in the stomach and over the kidneys until he agreed to confess. He pointed out some of the men who he said participated in the beating and were present when he made the confession.
 

 Counsel for the defense in his brief makes much over the fact that the defendant was held incommunicado up until the time that he confessed. This is simply not borne out by the testimony. The only people who wanted to see him were newspaper men and members of the police force. The
 
 *229
 
 newspaper men were allowed to see him on the morning of the eighth. The curious policemen were kept away as a precautionary measure because the defendant was accused of having killed one of their brother officers. The defendant stated that he did not care to see a lawyer. Again counsel complains that defendant was not permitted to see a certain police officer. The officer was not on duty when the defendant made the request. When the officer returned to duty he went to see the defendant. The defendant did not complain to this officer of having been beaten nor did he complain to any one else.
 

 It is. the.-law of our state that before introducing a confession in evidence it is incumbent upon the state to prove that the confession was freely and voluntarily made. State v. Robinson, 215 La. 974, 41 So.2d 848; State v. Wilson, 214 La. 317, 37 So.2d 804. To decide that question in the instant case is simply to decide whether we will believe the witnesses for the state or the uncorroborated testimony of the defendant. In his per curiam the trial judge after discussing the above testimony states, “The evidence in favor of the free and voluntary character of the confession, in the humble opinion of the court, was overwhelming and left no doubt.” We see no reason to disturb his finding. State v. Habighorst, 212 La. 723, 33 So.2d 411; State v. Holmes, 205 La. 730, 18 So.2d 40; State v. Johnson, 199 La. 219, 5 So.2d 751; State v. Calloway, 196 La. 496, 199 So. 403.
 

 Bills of Exception Numbers 36, 37 and 38 were reserved to the trial judge’s refusal to give certain requested special charges to the jury. The charges are rather lengthy and will not be quoted for that reason. The judge’s ruling was correct. Insofar as the requested charges suggested that the jury should find the defendant guilty of manslaughter rather than murder if they found that he killed the deceased while resisting an illegal arrest, the charge was incorrect. We. have no such provision in our law. Whether an illegal arrest would constitute provocation sufficient to reduce the crime from murder to manslaughter would be a question of fact upon which the judge properly refrained from commenting. Insofar as the requested charges referred to the subject of provocation as a mitigating circumstance and to justifiable homicide, they were thoroughly and correctly covered in the court’s charge to the jury.
 

 Bill of Exception Number 44 arises out of the court’s refusal to grant special charge No. 18 presented by counsel for the defense, which requested the trial court to instruct the jury that they might return any one of the following responsive verdicts:
 

 1. Guilty as charged, which carries the death penalty.
 

 2. Or Guilty without capital punishment.
 

 3. Guilty of manslaughter.
 

 4. Guilty of negligent homicide;
 

 5. Guilty of attempted murder.
 

 6. Guilty of attempted negligent horhicidé.
 

 
 *231
 
 7. Not guilty because of insanity.
 

 8. Guilty of attempted manslaughter.
 

 9. Not guilty.
 

 We note at the outset that counsel for the defense included in this bill a rather lengthy reference to the unconstitutionality of Act No. 161 of 1948 dealing with responsive verdicts. The trial judge in his per curiam specifically states that the matter there referred to is improperly included in this bill, that it did not come up when the requested charge was denied and was not discussed then. In other words, the only question presented for our consideration is whether the judge was correct in refusing •to allow this special charge to the jury.
 

 Article 390 of the Code of Criminal Procedure reads as follows:
 

 “The prosecution and the defense have each the right to present to the court, before the argument has begun, any written charge or charges, and request that the same be given. Except as otherwise provided herein, the judge must give every such requested charge that is wholly correct and wholly pertinent, unless the matter contained in such charge have been already given, or unless such charge require qualification, limitation or explanation.” A thorough search of the transcript of the testimony in this case has failed to reveal a single instance in which the defendant even hinted at insanity as a defense. His entire defense was that the killing was accidental. Obviously, therefore, Item 7 of the requested charge was not pertinent to the issue of the case and under the plain and inescapable implication of Article 390, supra, the judge was not required to give the charge.
 

 However, this being a case in which the death sentence has been imposed, we have considered the remaining items of the requested charge and counsel’s arguments in support of their correctness. This crime was committed after the effective date of Act No. 161 of 1948, which reads in part as follows:
 

 "An Act
 

 “To amend and re-enact Article 386 of the Louisiana Code of Criminal Procedure, as amended by Act 147 of 1942, so as to set out, for certain specified cases, those included offenses which may be responsive verdicts and upon which the judge shall charge the jury, and to repeal all laws or parts of laws in conflict herewith.
 

 “Section 1. Be it enacted by the Legislature of Louisiana, That Article 386 of the Louisiana Code of Criminal Procedure, as amended by Act 147 of 1942, be amended and re-enacted so as to read as follows:
 

 “Article 386. Whenever the indictment sets out an offense including other offenses of less magnitude or grade the judge shall charge the jury the law applicable to all offenses of which the accused could' be found guilty under the indictment. The only responsive verdicts which may be rendered,, and upon which the judge shall charge the
 
 *233
 
 jury, where the indictment charges the following offenses are:
 

 “Murder.
 

 “Guilty as charged.
 

 “Guilty without capital punishment.
 

 “Guilty of manslaughter.
 

 “Not guilty. * * *”
 

 If the act is constitutional the defendant has no complaint, for the verdicts prescribed as being responsive to murder were given in the court’s general charge to the jury. Defendant strenuously urges that the act is unconstitutional. His entire argument is founded upon a belief that Act No. 161 of 1948 is a procedural act which amends the substantive law and that such legislation is unconstitutional; he cites as authority State v. Rodosta, 173 La. 623, 138 So. 124, and State v. Brown, 214 La. 18, 36 So.2d 624.
 

 In State v. Rodosta the question arose whether the legislature could, by adopting the Code of Criminal Procedure, change the substantive law of the state. Preparatory to the drafting and adopting of the Code of Criminal Procedure, the legislature, possibly apprehensive as to the validity of the adoption of an entire code by a single act in view of the general prohibitions of Sections 16 and 18 of Article III of the Constitution, initiated a constitutional amendment. When adopted, it in effect provided for the drafting and adoption of the Code of Criminal Procedure. In Rodosta’s Case the court held that the legislature by adopting the Code of Criminal Procedure could not change the substantive law because no such authority had been conferred by the constitutional amendment. The principal of the Rodosta Case has been reiterated on numerous occasions, all dealing with an original article of the Code of Criminal Procedure, and all citing State v. Rodosta as the original authority. State v. Capaci, 179 La. 462, 154 So. 419; State v. Florane, 179 La. 453, 154 So. 417; State v. Elmore, 179 La. 1057, 155 So. 896; State v. Clement, 194 La. 395, 193 So. 685; State v. Moore, 196 La. 617, 199 So. 661. Properly understood the case does not establish ascendancy of the substantive over the procedural law, and it does not prohibit an act which amends an article of the Code of Criminal Procedure from amending an article of the Criminal Code where the two articles are so nearly allied in subject and content as to make this result a necessity. Nor do we know of any other authority which supports counsel’s position, despite his assertion that it is “horn book” law. In State v. Brown, this court expressly refrained from passing upon the question.
 

 Immediately after the judge delivered his-general charge to the jury, counsel for the defense reserved Bill of Exception No. 50 as follows: “I object to that part of the General Charge with respect to waiver of extradition and reserve a bill of exception, making the general charge part of the bill.”
 

 This bill presents nothing for review for in reserving the bill counsel failed to specify in what respect he considered
 
 *235
 
 the charge to be erroneous. Article 391, Code of Criminal Procedure. State v. Covington, 169 La. 939, 126 So. 431.
 

 On December 22, 1948, when the defendant was called for sentence, the defense presented a motion for a continuance of sentence, a motion for a new trial and a motion in arrest of judgment, all. of which were overruled and which are the subject of Bills of Exception Numbers 53, 51 and 52, respectively.
 

 The motion for a continuance of sentence is no more than a reiteration of the request for a lunacy commission. In support of this motion counsel offered as “newly discovered evidence” a letter from defendant’s mother which disclosed that she was suffering from “shingles.” The record does not indicate how this could have even the remotest connection with the sanity of the accused. The motion was properly denied for the reasons given in our discussion of Bills of Exception Numbers 1 and 7.
 

 The motion for a new trial was properly overruled, being a summation of the errors previously complained of and disposed of in our treatment of other bills.
 

 The only new point raised in the motion in arrest of judgment is whether the defendant was deprived of a fair and impartial trial by reason of the jury’s being in continuous session from 10 :00 a. m. on the morning of the 29th of October until
 
 4:40
 
 a. m. on the morning of the 30th of October when they returned the verdict. There is nothing in the record to show that the jury were fatigued to a point where they could not intelligently consider the matter before them. The ruling was correct.
 

 The twenty-five bills which have not been mentioned individually were not briefed or argued on appeal and we deem them to be abandoned. However, we have reviewed them and find that they have no merit.
 

 The conviction and sentence are affirmed.
 

 HAMITER, J., does not take part.