**James P. DAMERON**

v.

**W. E. HARSON et al.**

**Civ. A. No. 11712.**

United States District Court
W. D. Louisiana,
Lafayette Division.

Feb. 21, 1966.

Application for writ of habeas corpus and for an injunction. The District Court, Putnam, J., held that where all of alleged errors allegedly violations of federally protected rights could be corrected on appeal after conviction or by motion to quash before conviction applicant had not exhausted his remedies, precluding intervention by federal court on habeas corpus.

J. Minos Simon, Phil Trice, John R. Mouton, Simon, Trice & Mouton, Lafayette, La., for plaintiff.

Bertrand DeBlanc, Lafayette, La., in pro. per., Nolan J. Edwards, Asst. Dist. Atty., Crowley, La., Frances Gilfoil, Asst. Dist. Atty., Lafayette, La., for W. E. Harson and Bertrand DeBlanc.

## FINDINGS AND CONCLUSIONS

PUTNAM, District Judge.

James P. Dameron made application to this Court on January 28, 1966, for the issuance of a writ of habeas corpus directed to W. E. Harson, Sheriff of the parish of Lafayette, who then had him in custody, and for a temporary restraining order, preliminary and permanent injunctions against the Sheriff, the Honorable Bertrand DeBlanc, District Attorney of the Fifteenth Judicial District of Louisiana, in and for the parish of Lafayette, and the Honorable Jerome E. Domengeaux, Judge of Division "B" of said Fifteenth Judicial District Court, restraining them from

further proceeding with the prosecution of the applicant under an indictment for murder which had been returned against him by the Grand Jury in and for the parish of Lafayette.

The indictment was returned against the applicant on December 24, 1965. Thereafter, an application was made to the Fifteenth Judicial District Court for a writ of habeas corpus and, alternatively, for bail. A hearing was held by Judge Domengeaux on January 10, 1966. A stenographic transcript of the evidence introduced and sought to be introduced at the habeas corpus proceeding was filed with this court on February 8, 1966 under the certificate of Judge Domengeaux pursuant to 28 U.S.C.A. § 2245.

With the exception of the matter contained in the certificate of the Judge, the defendant stipulated that the transcript so filed showed substantially the entire proceedings in the State Court and the evidence which the prisoner sought to introduce in his behalf, with the rulings of the trial judge made at the hearing upon which the present application before this court is based. This transcript, together with other documents consisting of the record in Criminal Docket No. 35638, State of Louisiana ex rel. James P. Dameron v. W. E. Harson, Sheriff, constitutes the record made up in the State Court at the hearing.

The position taken by the petitioner in the State Court rested upon four basic complaints: (a) that the indictment is null and void because it is based on illegal evidence presented to the Grand Jury contrary to state law; (b) the indictment is void because an unauthorized person was permitted to appear before the Grand Jury contrary to state law; (c) there is no probable cause to hold Dameron on an indictment for murder as there is no sufficient evidence to support the charge and (d) the proof of his guilt is neither evident nor the presumption great, in consequence of which he should be entitled to release on bail pending trial.

The application for habeas corpus and/or bail was denied. The petitioner then applied to the Supreme Court of Louisiana for the issuance of a writ of habeas corpus, and alternatively for certiorari, mandamus and prohibition directed to the trial judge, prohibiting him from proceeding further with the action until the questions thus posed were resolved.

The Louisiana Supreme Court on January 24, 1966, 248 La. 784, 181 So.2d 782, denied this application, stating: "The showing made is not sufficient to warrant the exercise of our supervisory jurisdiction. Applicant has a remedy by appeal in the event of a conviction."

In addition to the record in the State Court, Dameron sought to introduce evidence before this court to show the same facts relied upon in his application there. The purport of the intended testimony was the same as that offered in the hearing before Judge Domengeaux; by it, according to statements of counsel, proof would be made that the District Attorney made unsworn statements to the Grand Jury concerning the past criminal record of the accused which were prejudicial to him, and that an unauthorized person was permitted in the Grand Jury room to monitor an electronic recording device on which testimony was recorded, in violation of the law of Louisiana; further, that the accused should be admitted to bail because he acted in self defense in the killing with which he is charged, hence there is not sufficient evidence to hold him and further, proof of his guilt is not evident nor is the presumption great, hence he should have been granted bail.

For all purposes of this decision, we consider the testimony offered at this hearing to be substantially as stated by counsel for petitioner.

After trial in the State Court, Dameron announced his intention to apply to the Louisiana Supreme Court for writs, and requested that the bills of exception taken by him be furnished him for that purpose. The trial judge took the position that Rule XII of the Louisiana Supreme Court, LSA:R.S. Vol. 8, Cumulative Supplement 1965, p. 84, contem-

plated that the record of the case was to be sent up only if the application was granted. Section 3 of that rule so provides. He wrote counsel to this effect on January 11, 1966, and expressly stated that if there were authority to the contrary he would revise his ruling. He did not avail himself of this offer. The application made to the Supreme Court did not have the transcript of the bills of exception attached to it.

Our inquiry is first, does this applicant, a white man charged by indictment of a grand jury with the crime of murder, have a federally guaranteed right to bail under the Fourteenth and Eighth Amendments to the Constitution of the United States? We conclude that he does not.

### BAIL

In Louisiana, by Article 1, § 12, Constitution of 1921, it is provided that excessive bail shall not be required, and that all persons shall be entitled to bail except those charged with a capital offense, "where the proof is evident or the presumption great." Murder is a capital crime, punishable by death or life imprisonment. LSA–R.S. 14:30.

The provisions of LSA–R.S. 15:85 recognize the rule set out in the Constitution. It is further required that prosecution for murder can be instituted only by indictment of the grand jury. Article 1, § 9, Louisiana Constitution of 1921. Hence, prior to indictment, an accused is entitled to a preliminary examination held before a committing magistrate for the purpose of testing the evidence under which he is held to determine its sufficiency, *as a matter of right*. After indictment, however, such preliminary examination rests within the discretion of the trial judge. LSA–R.S. 15:154. State v. Pichon, 148 La. 348, 86 So. 893 (1921). The theory upon which this rule is predicated is that the finding of the indictment by a grand jury gives rise to a sufficient presumption that the proof is evident and the presumption great as regards to bail, to

preclude any inquiry into the merits of the prisoner's case upon a habeas corpus. State ex rel. Hunter v. Brewster, Sheriff, 35 La.Ann. 606 (1883). See also: State v. Hamilton, 247 La. 43, 169 So.2d 902 (1964); State v. Leming, 217 La. 257, 46 So.2d 262 (1950). State v. Gaspard, 222 La. 222, 62 So.2d 281 (1952), presented the question on a motion to quash the indictment alleging that the crime charged (theft) was actually a sale on credit. It was treated as a motion for a preliminary examination by the Court and denied under LSA–R.S. 15:154.

There is a striking similarity between the Louisiana Constitutional and procedural provisions and those found in the Eighth Amendment to the United States Constitution, as supplemented by 18 U.S.C.A., Cr.Rule 46(a) (1).

This was clearly the ruling of Judge Domengeaux in the present case. At page 35 of the transcript he stated:

"I certainly am not going to go beyond the indictment and grant you a preliminary examination after the Grand Jury in their discretion has indicted this man. As a consequence of which, I am not going into the facts of this case under any condition because I am not interested in knowing about them in this hearing."

At other stages in the hearing, the state judge expressed his belief that the question of whether or not the accused acted in self defense was one for the jury to decide upon the trial, going to the merits.

In Mastrian v. Hedman, 326 F.2d 708 (8 Cir. 1964), cert. den. 376 U.S. 965, 84 S.Ct. 1128, 11 L.Ed.2d 982, and in Pilkinton v. Circuit Court of Howell County, Missouri, 324 F.2d 45, (8 Cir. 1963), it is recognized that neither the Eighth Amendment nor the Fourteenth Amendment of the United States Constitution requires that everyone charged with a state offense must be given his liberty on bail pending trial. It was noted that traditionally and acceptably, there are offenses of a nature as to which a state may refuse to make provision for

a right to bail. The following language in *Mastrian* is particularly appropriate here:

"As to the offenses, however, for which a state has provided a right of bail it may not, anymore than as to other substantive or procedural benefits under its criminal law system, engage in such administration as arbitrarily or discriminatorily to effect [a] denial or deprivation of the right to a particular accused."

\*    \*    \*    \*    \*    \*

"Here, as indicated, to entitle petitioner to federal habeas corpus consideration, it was necessary for him to set out the facts and circumstances involved in the considerations in relation to which the trial court was entitled to act. Such facts as were set out do not, in our opinion, indicate the possibility of arbitrary or discriminatory action having occurred so as to provide a basis of probable cause to review the District Court's determination."

\*    \*    \*    \*    \*    \*

"There might have been room for a difference in judgment on the amount of bail, but consideration by a federal court could not be asked or given upon that basis. A federal court would not be entitled to act in substitution of judgment for that of the state court. What the state court did would have to be beyond the range within which judgments could rationally differ in relation to the apparent elements of the situation. *It would have to amount in its effect to legal arbitrariness in the administration of the bail right provided, so as to constitute a violation of due process, or to discriminatoriness in the application of the right as against petitioner, so as to constitute a violation of equal protection.*" (326 F.2d 710, 711. Emphasis Supplied.)

In *Mastrian*, the application was addressed to the federal court for reduction of bail, set at $100,000.00 on a first degree murder charge. Under Minnesota law, where capital punishment is abolished, the offense was bailable. The same principles apply here, however, with even greater force.

■ This court cannot say that the action of the trial judge in denying bail and in refusing to allow Dameron to show evidence that the homicide was justifiable under the plea of self defense was arbitrary or discriminatory in view of the settled law of Louisiana which he followed in reaching his conclusions.

### INVALIDITY OF INDICTMENT

The transcript will reflect that at the hearing the state court was concerned by the allegations made that an unauthorized person was in the grand jury room during its sessions, in violation of LSA–R.S. 15:215, in the person of Mrs. Patricia Taylor. It was, and is, alleged that she was there solely for the purpose of monitoring a recording device upon which testimony was taken. If this allegation were substantiated, under the statute and the decision of State v. Revere, 232 La. 184, 94 So.2d 25, (1957), the indictment would clearly be vulnerable to a motion to quash. The transcript contains testimony of Mrs. Taylor that she was sworn by the foreman of the jury, and, under cross-examination by Mr. DeBlanc, that she was acting in the capacity of stenographer in doing so. (See pages 8 through 13.)

■ From the ruling of the Court at page 13, and the judgment entered dismissing the application, it is clear that on the basis of this testimony the judge found that her presence was in an authorized capacity. Cf. State v. Howard, 230 La. 327, 88 So.2d 387 (1956). We consider this finding to be governed by the same principles as announced in the *Mastrian* case, supra.

Further attack was made upon the indictment in that the district attorney made unsworn statements of fact to the grand jurors concerning prior offenses of the accused. When the applicant sought to make a showing of what these statements were, they were excluded as being violative of the secrecy requirements imposed by LSA–R.S. 15:215.

As shown above, a prosecution for murder must be based upon an indictment by a grand jury under the Louisiana Constitution. Additionally, LSA–R.S. 15:213 provides:

"In the investigation of a crime the grand jury can receive no other than legal evidence and such as is given by witnesses produced and sworn before them, or furnished by legal documentary evidence."

Petitioner contends that the refusal of the trial judge to permit him to show what these unsworn statements were was error of such magnitude that it violated his constitutional right under the Fifth and Sixth Amendments to the United States Constitution, denying him a proper indictment, the right to confront the witnesses against him, due process of law and equal protection of the laws under these provisions, and also under the Fourteenth Amendment, the judge's action constituting action taken by the State of Louisiana. The interpretation placed upon LSA–R.S. 15:213 by the Louisiana Supreme Court in State v. Simpson, 216 La. 212, 43 So.2d 585, cert. den. 339 U.S. 929, 70 S.Ct. 625, 94 L.Ed. 1350 (1950); and its forerunner, State v. Dallao, 187 La. 392, 175 So. 4 (1937), decided under prior Louisiana law, completely eliminates the major premise of this argument.

In *Simpson*, the court said:

"First, was the trial judge correct in refusing to hold a hearing on the nature and legality of the evidence which went before the grand jury? This court has answered the question in the affirmative. State v. Dallao, 187 La. 392, 175 So. 4, and cases there cited. Article 213 of the Code of Criminal Procedure is *no more than a direction to the grand jury that it must limit itself in its investigations to the consideration of legal evidence.* That article may not be used as authority for forcing the trial judge into a review of the proceedings before the grand jury in which the evidence which was produced will be subjected to all of the

multiple objections which have evolved for the protection of the defendant when he is actually being tried." (43 So.2d 588, 589. Emphasis Supplied.)

■ The remedy for such error, if any exists, is by appeal following conviction.

Moreover, LSA–R.S. 15:284 provides that state procedure for objecting to an indictment is by motion to quash before arraignment. See State v. Ward, 246 La. 766, 167 So.2d 359 (1964), State v. Revere, supra, State v. Jemison, 240 La. 787, 125 So.2d 363 (1960); State v. Kifer, 186 La. 674, 173 So. 169, 110 A.L.R. 1017 (1937).

These cases show the diligence with which constitutional and statutory requirements pertaining to grand jury proceedings have been enforced by the state courts. They leave no doubt that petitioner has a remedy by appeal. As a matter of fact, the trial judge in this instance has indicated in the certificate filed by him pursuant to Title 28 U.S. C.A. § 2245 that he considers a motion to quash to be available to petitioner for this purpose even now.

■■ It is well settled that the Fifth Amendment to the Constitution of the United States does not require that only legal evidence be received by a grand jury in finding an indictment. Costello v. United States, 350 U.S. 359, 76 S.Ct. 406, 100 L.Ed. 397, 1956. Applying these standards to the State under the Fourteenth Amendment, we find no state action here violative of due process or equal protection. The interpretation placed upon LSA–R.S. 15:213 by the Louisiana Supreme Court in State v. Simpson supra, is well within federal limitations.

## EXHAUSTION OF STATE REMEDIES

■ We conclude that the jurisdictional requirements of Title 28 U.S.C.A. § 2241(c) (3) are not met. Conceding that there are violations of federally protected rights and that we are in error in our conclusions, the applicant has failed to show exhaustion of state remedies. All of the alleged errors which he de-

cries may be corrected on appeal after conviction, or by motion to quash before conviction. Thus the plain mandate of the Congress, expressed in Title 28 U.S. C.A. § 2254, that such remedies be exhausted before recourse to this court will lie, precludes our interference with the administration of the criminal laws of the State.

In this circuit, even in the exercise of federally guaranteed and protected rights this requirement is insisted upon in applications addressed to federal courts prior to state trial. Brown v. Rayfield, 320 F.2d 96 (5 Cir. 1963), cert. den. 375 U.S. 902, 84 S.Ct. 191, 11 L.Ed.2d 143; In re Wykcoff, 6 Race Rel.L.Rep. 786; Hillegas v. Sams, 349 F.2d 859 (5 Cir. 1965). The leading case on post conviction applications, Fay v. Noia, 372 U.S. 391, 83 S.Ct. 822, 9 L.Ed.2d 837, 1963, also recognizes the rule.

### INJUNCTION

As we have seen, this case does not present an extraordinary situation where state criminal prosecutions are invoked to prevent or thwart the efforts of accused persons charged with criminal acts resulting from the exercise by them of federally protected and guaranteed rights, so as to bring into play the rule of Dombrowski v. Pfister, 380 U.S. 479, 85 S.Ct. 1116, 14 L.Ed.2d 22 (1965), dealing with injunctive relief under 42 U.S. C.A. § 1983. The function of the injunction in such cases and the same rationale underlying "parallel systems of effective federal redress against state inspired, state caused, state permitted, instances of unequal treatment" is made crystal clear by the concurring opinion of Judge Brown in *Hillegas,* supra.

Absent such factors, petitioner finds himself without warmth or comfort. Title 28 U.S.C.A. § 2283 prevents this court from interfering with proceedings in a State court except as "expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments".

■■ We find no express statutory authorization to interfere with proceedings in the state court at this time. There are no facts in the record to support a conclusion that the courts of Louisiana cannot afford defendant a fair and impartial trial. No great and irreparable injury will result to petitioner that would not result to any other person indicted for the crime of murder. Allegations of conclusionary nature, unsupported by facts, do not suffice to warrant federal intervention in every criminal prosecution brought under state laws. Assuming the facts offered to be proven by the applicant to be true, deleting therefrom the conclusions drawn by counsel, we find no basis for the injunctive relief sought. Douglas v. City of Jeannette, 319 U.S. 157, 63 S.Ct. 877, 87 L.Ed. 1324 (1943); Stefanelli v. Minard, 342 U.S. 117, 72 S.Ct. 118, 96 L.Ed. 138 (1951); Wilson v. Schnettler, 365 U.S. 381, 81 S.Ct. 632, 5 L.Ed.2d 620 (1961).

It was stipulated that the record made up at the hearing in this court constituted all evidence to be offered by Dameron or the respondents on this issue and that final judgment on the merits of the claim for injunctive relief could be rendered at this time. The injunctive relief is denied.

We expressly note that allegations in the application made before us charging that the relator is confined in the parish of Acadia and that the sheriff of that parish has secret listening devices in the jail and its environs which prevent the accused from consulting with counsel in private, are completely unsupported.

■ We take judicial cognizance of the fact that Lafayette Parish is in the process of demolishing its former courthouse and jail for the purpose of rebuilding these facilities, and that this work has been going on during the period of plaintiff's arrest and detention. All parish offices are temporarily housed in rented space, and there is no parish jail, except temporary "hold-over" facilities, as is stated by Judge Domengeaux in his certificate.

The Acadia Parish jail is also used by the Marshal of this court for holding

federal prisoners, and is a facility approved by proper federal authorities for this purpose.

While we do not believe it necessary, we point out to the state officials made defendants in this proceeding that there is now no question but that the Fourteenth Amendment to the United States Constitution makes applicable the full protection of the Bill of Rights to all citizens of every state. Louisiana, like every other state in the union, must accommodate its criminal processes to these standards. It has done so in this instance, and there is no reason to believe that it will not continue to do so in the future.

A decree will be entered dismissing the application in this case at petitioner's costs.