440 So.2d 828 (1983)
STATE of Louisiana, Appellee,
v.
Robert C. BROADWAY and Marvin Ray Douglas, Defendants.
No. 15323-KA.
Court of Appeal of Louisiana, Second Circuit.
October 24, 1983.
*830 John S. Stephens, Coushatta, for defendants.
William J. Guste, Jr., Atty. Gen., Baton Rouge, William R. Jones, Dist. Atty., Coushatta, for appellee.
Before JASPER E. JONES, FRED W. JONES, Jr., and NORRIS, JJ.
JASPER E. JONES, Judge.
Robert Broadway and Marvin Douglas were indicted for aggravated rape. They were tried by a jury and found guilty as charged. They were sentenced to life imprisonment at hard labor without benefit of parole, probation, or suspension of sentence. La.R.S. 14:42. On appeal, defendants rely on five assignments of error for reversal of their convictions and sentences.
Assignment of Error # 1
Defendants contend the trial court erroneously allowed testimony of other crimes into evidence. The testimony to which they refer is the rape victim's description of the events leading to her rape.
The rape victim, who was 14 years old at the time of these events, testified she was at home with her mother on the evening of February 18, 1982. At about dark, there was a knock on the door of their mobile home. It was Marvin Douglas, who worked for the victim's stepfather on a farm. Douglas asked the mother for a ride home. She agreed and left to take him home in her pickup.
A short while later a vehicle pulled up to the trailer and there was a knock at the door. The victim, who was dressing for bed, was clad only in a T-shirt and panties. She looked out the window and saw it was her mother's pickup that pulled up. Knowing the door was locked, she went to let her mother in. When she opened the door Douglas was standing there. She tried to slam the door but Douglas pushed his way in.
After Douglas pushed his way in, he pushed the victim to the floor, pulled off her panties, and started playing with her vagina. At this point, Broadway, who also worked for the victim's stepfather, entered the trailer. He was intent on burglarizing the trailer and managed to get Douglas to stop molesting the victim. Broadway then gagged the victim with socks and tied her hands with speaker wire from her stereo. The defendants then proceeded to burglarize the trailer. While this was going on, Broadway grabbed a steak knife and threatened to scalp the victim if she did not tell him where any money was. After the defendants took all they wanted, Douglas forced the victim, still wearing only a T-shirt, into the truck and she was driven to the rape site where the crime charged occurred.
Defendants argue that the portion of this testimony describing the events which occurred between the time Douglas pushed his way into the trailer and the time they arrived at the rape site is fraught with other crimes evidence and should not have been admitted. These events are part of the res gestae and the testimony was properly admitted.
The general rule is that the prosecution cannot introduce evidence of other criminal acts by the accused. This prohibition does not bar the admission of evidence of other criminal acts, which are an inseparable part of the whole deed. State v. Haarala, 398 So.2d 1093 (La.1981); State v. Belgard, 410 So.2d 720 (La.1982). Such acts are denominated as part of the res gestae and are admissible under the authority of La.R.S. 15:447-48. Admissible res gestae events are related to the charged offense to such an extent that the state could not accurately present its case without reference to them. State v. Haarala, supra.
The criminal acts included in the events leading to the rape were part of a continuous *831 chain of events culminating in the rape. These events were inseparable from the rape itself and the state could not accurately present its case without reference to them.
This assignment of error lacks merit.
Assignment of Error # 2
Defendants contend the confessions given by each of them were not free and voluntary and should have been suppressed.
The defendants were captured in Natchitoches Parish at about 7:30 a.m. on the morning following the rape. After a short stop in Coushatta, where defendants were booked by the Red River Parish Sheriff's Office, they were taken to the Caddo Parish Sheriff's Office in Shreveport.[1] While there, they each individually gave oral confessions to Investigator Ron Ashby. Ashby tape recorded the confessions. Broadway gave his confession at 10:28 a.m. and Douglas gave his at 11:15 a.m.
Defendants did not request a suppression hearing prior to trial. The trial judge held a suppression hearing during trial out of the presence of the jury. The tapes were played for the jury after the judge determined the confessions were freely and voluntarily given.
Defendants make several allegations to support their claim that the confessions were not free and voluntary. They allege they had not eaten or slept since the day previous to giving their confessions. They also contend they were intimidated by Ashby's holstered revolver, which he wore during their interrogation. They claim Ashby subjected them to threats and other verbal abuse. They further assert that each asked for the assistance of counsel before giving any statements and Ashby refused to honor their requests.[2]
Before a confession can be introduced into evidence, the state has the burden of affirmatively proving that it was free and voluntary and not made under the influence of fear, duress, menaces, threats, inducements or promises. La.R.S. 15:451; La.C.Cr.P. 703. The admissibility of a confession is in the first instance a question for the trial judge. His conclusions on the credibility and weight of testimony relating to the voluntariness of a confession will not be overturned on appeal unless they are not supported by the evidence. State v. Taylor, 422 So.2d 109 (La.1982); State v. Perry, 420 So.2d 139 (La.1982); State v. Sonnier, 379 So.2d 1336 (La.1979).
There is sufficient evidence in the record to support the trial court's findings that defendants were not intimidated or coerced into making their statements and defendants did not request the assistance of counsel before making their statements. Each defendant signed a waiver of rights form. Ashby testified he in no way threatened or intimidated defendants and they did not request counsel. His testimony is supported by the taped confessions. Before allowing defendants to tell their story, Ashby asked them if he threatened, coerced or promised them anything. They answered no.
We find defendants' allegation that they were intimidated into making their confessions because of Ashby's holstered revolver is without merit. The fact the officer who took the confessions was armed does not render the otherwise free and voluntary confessions inadmissible. There was affirmative proof adduced that no threats were made against defendants and Ashby did not intimidate them in any other manner. See State v. Kennedy, 232 La. 755, 95 So.2d 301 (1957); State v. Holmes, 205 La. 730, 18 So.2d 40 (1944).
Defendants are apparently trying to set up a claim of duress by their contention they had not slept or eaten. We find any duress arising from these facts is not attributable to the law enforcement officers and cannot be used to invalidate the confessions. Defendants had only been in custody some *832 3-4 hours before they confessed. A good portion of that time was spent in transporting them to Coushatta and Shreveport. There was no testimony that Ashby was aware the defendants had not slept or eaten or that he took advantage of their hunger or lack of sleep in taking the confessions. We attribute defendants' hunger and lack of sleep to their own voluntary actions in trying to elude the police the previous night. The defendants had committed the rape and became fugitives less than twelve hours before they were arrested. This self-imposed lack of food and sleep during this relatively short period of time cannot cause otherwise voluntary confessions to become involuntary.
This assignment of error lacks merit.
Assignment of Error # 3
Defendants contend that the trial court erred in denying their attorney's motion to withdraw as counsel. The motion was not made until after the trial began. The grounds were that defendants did not trust and were dissatisfied with their appointed attorney. There were no allegations the attorney was incompetent or unprepared or that defendants were prejudiced by his legal service.
The federal and state constitutions provide the accused has the right to counsel of his own choosing to defend him on a criminal charge. U.S. Const.Amend. VI; La. Const. Art. 1, § 13. This right must be exercised at a reasonable time and cannot be manipulated to obstruct the orderly procedure in our courts or interfere with the fair administration of justice. State v. Lee, 364 So.2d 1024 (La.1978); State v. Lawson, 393 So.2d 1260 (La.1981). There is no constitutional right to make a new choice of counsel on the very day a criminal trial is to begin. State v. Leggett, 363 So.2d 434 (La.1978).
In this case the defendants did not state any particular reasons for wanting their attorney to withdraw. They merely alleged their general dissatisfaction with his services. Their motion was no more than a delaying tactic and the trial court committed no abuse of discretion by denying it.
This assignment of error has no merit.
Assignment of Error # 4
Defendants contend the trial court erred in denying their challenge for cause of prospective juror James Ivey. The court's ruling forced them to use a peremptory challenge to keep Ivey off the jury panel. Defendants exhausted their peremptory challenges before completion of the panel and are therefore permitted to complain of the court's action. La.C.Cr.P. 800.
It is well settled that the trial court has broad discretion in ruling on challenges for cause and his ruling will not be disturbed on appeal unless it is arbitrary or unreasonable. State v. Webb, 364 So.2d 984 (La.1978); State v. McIntyre, 381 So.2d 408 (La.1980), cert. denied 449 U.S. 871, 101 S.Ct. 209, 66 L.Ed.2d 90. Furthermore, a prospective juror can be rehabilitated if the court is satisfied he can render an impartial verdict according to the evidence and the instructions given by the court. See La.C. Cr.P. 797; State v. Webb, supra; State v. McIntyre, supra.
During voir dire, while being questioned by defendants' counsel, Ivey indicated he would like to hear both sides of the story. He also indicated if the case was close he might be influenced by the fact that defendants' counsel presented no evidence at all or made no argument on behalf of his clients. However, upon further interrogation by the court, Ivey stated he understood the presumption of innocence and he would follow the law as instructed by the court. He advised the trial judge he would follow his obligation as a juror to be fair and impartial even if the defendants presented no evidence.
This issue is controlled by State v. Shea, 421 So.2d 200 (La.1982) and State v. Frazier, 283 So.2d 261 (La.1973).
In Shea the prospective juror indicated that he would expect the defendant to produce some evidence on his own behalf in order to find him not guilty. It was found *833 that the trial court did not abuse its broad discretion in overruling the challenge for cause because the prospective juror told the court he could and would apply the law according to the court's instructions although, "it would be kinda hard." 421 So.2d at 205.
In Frazier the prospective juror stated his opinion would be affected by the defendants' refusal to testify. It was held that the challenge for cause was properly refused because the prospective juror told the court he could render a fair and impartial verdict based on the evidence.
This assignment of error lacks merit.
Assignment of Error # 5
Defendants contend the trial court committed reversible error by refusing to grant their motion for mistrial during voir dire. While voir dire was being conducted there were four uniformed officers present in the courtroom stationed in close proximity to defendants.[3] Defendants argue that the presence of the officers caused prejudice in the minds of the selected and prospective jurors by creating the implication that defendants were violent criminals.
The trial court is required to grant a mistrial and dismiss the jury, upon motion of the defendant, when prejudicial conduct in or outside of the courtroom makes it impossible for the defendant to obtain a fair trial. La.C.Cr.P. 775. A mistrial, however, is a drastic remedy warranted only when trial error results in substantial prejudice to the defendant, sufficient to deprive him of a fair trial. State v. Goods, 403 So.2d 1205 (La.1981); State v. Harris, 383 So.2d 1 (La.1980).
An accused may insist that he be brought into court with the appearance, dignity and self-respect of a free and innocent man. State v. Kinchen, 290 So.2d 860 (La.1974). He should not be brought before the court in any manner destructive of the presumption of innocence and of the dignity and impartiality of the judicial proceedings. State v. Wilkerson, 403 So.2d 652 (La.1981); State v. Clark, 340 So.2d 208 (La.1976), cert. denied, 430 U.S. 936, 97 S.Ct. 1563, 51 L.Ed.2d 782. The use of guards or other restraints inside the courtroom are matters within the sound discretion of the trial judge. State v. Tennant, 262 La. 941, 265 So.2d 230 (1972); State v. Burnette, 337 So.2d 1096 (La.1976). His ruling will not be disturbed on appeal absent a clear abuse of his discretion resulting in prejudice to the defendants. State v. Wilkerson, supra; State v. Tennant, supra.
The defendants were charged with a violent crime requiring a severe penalty upon conviction, which defendants ultimately received. There was no evidence defendants were handcuffed, shackled or in any other way restrained. Under these circumstances four guards were not too many to have in the courtroom to provide security during the trial of the two defendants.
We find no abuse of discretion by the trial judge in refusing to grant defendants' motion. There was no prejudice to defendants. All of the jurors selected for trial indicated that they understood the presumption of innocence and could and would be fair and impartial.
This assignment of error has no merit.
The conviction and sentence of defendants Robert Broadway and Marvin Douglas are affirmed.
NOTES
[1] The rape occurred in Red River Parish. The victim was abducted in Caddo.
[2] Defendants do not argue any Miranda issues other than the naked assertion that they requested counsel.
[3] Defendants' attorney did not make his objection until well into voir dire. 33 prospective jurors had already been questioned and 6 jurors had been chosen. While the trial judge refused to grant the motion, he did ask one of the officers to remove himself from inside the courtroom.