## No. 14,209.

## STATE OF LOUISIANA VS. REGILE EDWARDS ET ALS.

### SYLLABUS

1. The evidence, taken out of the presence of the jury and brought up with the bills of exception in this case, fully sustains the ruling of the trial judge, to the effect that the confessions attributed to the defendants were made freely and voluntarily and without the inducements of promises or threats, and such rulings will, in no case, be disturbed unless clearly erroneous.

2. In the cross-examination of one of the defendants, who had taken the stand as a witness in his own behalf, his attention was directed to the time, place, and circumstance of a statement attributed to him and said to be at variance with his testimony, and he admitted the probability of having made such state-ment. Thereafter, upon cross-examination of the person to whom the state-ment was said to have been made, and who had been introduced as a witness on behalf of the co-defendant, he was asked whether such statement had been made to him, to which he replied in the affirmative. The overruling of the objection that the question was not germane to the testimony elicited upon the direct examination of the witness and that it served to introduce an alleged confession by the defendant was not, under the circumstances, rever-sible error.

3. Neither general allegations as to errors of law, nor special allegations as to errors concerning facts, submitted to and found by the jury, will be consid-ered by this court as grounds for the reversal of the ruling of the district judge in denying an application for new trial.

APPEAL from the Sixteenth Judicial District, Parish of St. Landry.—*Lewis, J.*

*Walter Guion,* Attorney General, and *R. Lee Garland,* District Attorney (*Lewis Guion,* of Counsel), for Plaintiff, Appellee.

*B. H. Pavy* and *C. F. Garland,* for Defendants, Appellants.

The opinion of the court was delivered by

MONROE, J. Regile Edwards and Octave Robertson, otherwise called Octave Celida, having been convicted of murder, without capital pun-ishment, and sentenced to imprisonment at hard labor for life, present their case to this court by means of six bills of exceptions, five of which were taken to the admission in evidence of the confessions alleged to have been made by them, and the sixth, to the refusal of the district judge to hear testimony in support of a motion for a new trial.

Bills 1, 2 and 3 relate to confessions said to have been made by Edwards, at different times, to T. R. Carroll, Sr., a citizen, M. L. Swords, the *sheriff*, and Ambroise Vidrine, a deputy sheriff, and show that, substantially, the following objections were interposed to their admission in evidence, to-wit: To the confessions said to have been made to Carroll and Vidrine; that it does not appear from the testimony of those witnesses that the alleged declarations were free from duress and undue influence; that the witnesses swore that the confessions had been made and the defendant swore that they had not, and that the trial judge gave credence to their testimony and none to that of the defendant, whereas the doubt resulting from this conflict in the evidence should have been received in favor of the defendant, since, before the admission of such confessions, it should have been shown affirmatively and beyond a reasonable doubt that they were free and voluntary; that the whole record shows that the defendant was arrested in the country; that he was allowed to speak to no one, not even his employer; that he was handcuffed, that he was charged with being the murderer of Sidney Lafleur, and this three years after the alleged killing; that, at the time, he solemnly protested his innocence; that on the road to town a threat was made to "cut his whistle;" that he was placed in a cell separate from his co-defendant; that he was told that if he made his testimony conform to that of his co-defendant, who had acknowledged his guilt, as they said, then some relief would come to him, but that he declined to do so, and, on the preliminary examination, refused to go on the stand and acknowledge his guilt; and that all these and other facts, contained in the testimony annexed show circumstances amounting to menace, at least calculated to produce fear, under which the accused was called upon to tell what he knew about the crime and were such as to make his situation so full of perplexities and embarrassments as to deprive him of the character of a free agent and raise the presumption that even if the witnesses deposed the truth, which is denied, the defendant's statements and his replies could not have been the result of a purely voluntary, mental act; that the true ground upon which confessions extorted by violence or induced by promises are excluded is, that, when made under such influences, they tend to produce doubt as to their truth; that all efforts by the State to prove, *aliunde,* the truth of the alleged voluntary declarations were futile; that the testimony as to the veracity of the alleged confessions cannot be reconciled, it being claimed that the defendant

implicated Mrs. Sidney Lafleur, the widow of the deceased, in the homicide, when there was no proof that she took part; that this defendant confessed to Carroll that he was in the yard, near the gallery leading to the kitchen, when the fatal shot was fired, and to the sheriff that he was outside of the yard, in the road, when the same event took place, showing fear, trepidation and a sense of insecurity and uneasiness bordering on insanity, and showing that the alleged confessions, if made at all (which is stubbornly denied), are, and were, not true and not admissible because not true, if for no other reason.

The objections to the admission of the confession made to the sheriff were: That it was not free and voluntary, but was based on promises made to him by Durio and Fusiller, *quasi* law officers and detectives, who assisted in his arrest, to the effect that the defendant's co-defendant had confessed his guilty participation in the felony and that if the defendant would make a confession which would correspond therewith he would be used as a State witness, said officers stating that their names should not be used in court; that said officers had placed John Hebert in jail with defendant to urge him to confess, and that Hebert urged him to confess whether he knew anything or not, and that, in the hope of realizing the benefits promised him by the two detectives aforementioned, he falsely stated to the sheriff that he had participated in the felony, but that, soon thereafter, he began to suspect that the detectives were fooling him, and he declined to testify before the Grand Jury that he was guilty and immediately wrote a letter in order to set himself right with the parties who would have been affected by his false and unfounded confession, and further did all that he could to remedy the mischief caused thereby, said false confession having been made from no sense of guilt, but from a desire to help himself and from faith in the statement of the detectives that he would be relieved of an accusation involving the penalty of death.

The reasons assigned by the judge *a quo* for overruling these objections are, in substance; that the confessions were voluntary and were not induced by any promises of immunity from punishment, or hope of reward, or threats, the testimony of the defendant upon that subject having been contradicted by that of every other witness whom he implicated as offering inducements; that whether the confessions were true was a question for the jury; and that whether the State proved their truth by evidence, *aliunde,* is a matter with which the appellate court is not concerned; that the statement that the accused implicated

the widow of the deceased in the homicide, "when there is no proof that she took part therein," is purely gratuitous, is not supported by the evidence, and is a matter collateral to the trial of the case, since the widow was not on trial with her co-defendant; that the evidence estab-lished the fact that the defendant sent for the sheriff, and, after having been told by that officer that he could make him no promise, voluntarily made a statement to him and a subsequent one to the witness Vidrine.

The judge further states, with regard to the confession said to have been made to Vidrine, and the statement is equally applicable to the statement said to have been made to Carroll, "the witness Vidrine testifies that the confession was made and the accused denies making such confession. Whether or not it was made is a question of fact for the jury to determine."

For the purpose of determining whether the confessions in question were free and voluntary, Carroll, Vidrine, Swords (the sheriff), Durio and Fuselier (the persons referred to as "detectives") and other wit-nesses were examined, out of the presence of the jury, and their testi-mony, as a whole, contradicts that of the defendant upon every material point at issue, and satisfies us, as it did the judge *a quo*, that the confessions were not induced by threats or promises. They were not made whilst the defendant' was being brought, in shackles, from the country to town, upon the occasion of his arrest, but upon different occasions, and to different persons, during the two weeks which fol-lowed, and after there had been time for the apprehension and excite-ment immediately resulting from the arrest to subside. Durio and Fuselier, by whom the inducements are said to have been held out, deny that they made any promises or threats. It is undisputed that the sheriff declined to listen to any statement from the defendant until he had been sent for by the latter, and his testimony to the effect that he then told the defendant that he would make him no promise, and that he so told him because he considered it his duty as an officer, is entirely uncontradicted.

The exceptions incorporated in Bill No. 4 relate to a confession made by Octave Celida, or Robertson, to Theodore Doucet and Ray-mond Breaux. They were based on substantially the same grounds as those embodied in the other bills and were overruled for the same reasons.

It was said in State vs. Bartley, 34 Ann. 147, and State vs. Porteau,

52 Ann. 476, "Whether the confession was voluntary or not, and admissible or inadmissible under the evidence submitted, is a mixed question of law and fact, which we are authorized to review, the evidence on the point being set forth in the bill. of exceptions. Though this is the case, the ruling of a judge of first instance on a question of this character should not be disturbed, unless clearly erroneous. The presence of the witnesses before him; their manner of testifying, character, etc., afforded an opportunity of reaching a correct conclusion on the point at issue superior to any we possess." This language is applied in the present case.

Bill No. 5, sets forth that the State, having introduced, through Doucet and Breaux, the confession made to them by Celida, closed its case and that Celida, then testified in chief; that, upon cross-examination, he was asked: "Did you tell L. J. Dossman, the deputy sheriff, whilst on the train going to Alexandria, that Regil's mother wanted you to say that it was Mr. Angelos Prudhomme who had killed Sidney Lafleur, but that you could not say that. It was not true. It was as you had always said it, and that you had made peace with your God." To which the defendant, Celida, answered that he might have said so to Mr. L. J. Dossman, but, if he did, it was on account of the threats and promises that had been made to him; that, thereafter, Dossman having been called to the stand on behalf of the defendant, Edwards, testified to something that had taken place when he and others called on Edwards in the parish jail, and that, upon the cross-examination, he was asked by the District Attorney "Did Octave Robertson tell you, on the train going to Alexandria that Regil's mother wanted him to say that Mr. Angelos Prudhomme it was who had killed Mr. Lafleur, but he was not going to say that because that was not the truth, it was as he had always said it, and that he had made his peace with his God?" Whereupon the defendant objected, upon the ground that the question was not germane to the direct examination and that it was another attempt to introduce the confession of Celida without first laying the proper basis, as the jury well knew, from the testimony of Doucet and Breaux, what Celida "had always said," and that the State was bound by the answers of the accused and could not contradict him by the witness Dossman. The objections were overruled, for the reasons, as stated by the judge, that the defendant, Celida, testifying in his own behalf, was asked whether he had not made statements which conflicted with the testimony which was then being given, his

attention being called to the time, place and circumstances, and that it was competent to prove such statements; that the question did not call for a confession, in answer thereto, no confession was introduced, the answer of the witness being "he did."

There can be no doubt of the right of the prosecution to prove the statement to which the attention of the defendant had been especially called, and which we must assume was at variance with the testimony which he had given. Under some decisions of this court, the defendant might perhaps have insisted that the State should have made Dossman its own witness for that purpose, but as the answer merely confirmed what the defendant had testified to, as probable, the error, if error there was, in allowing the question on cross-examination, is not such as to demand the reversal of the judgment.

Bill No. 6 was taken to the refusal of the trial judge to hear evidence in support of the motion for new trial. The reasons assigned for this ruling are, that the motion for a new trial alleged that the verdict was .contrary to law and the evidence, and that an attempt was made to give it some force by a recital of some of the facts of the case, though the judge declines to discuss whether they were *proven* facts, but that the motion did not set forth all the facts and that whether the motion should be granted was within the discretion of the judge who had heard the evidence.

The allegations contained in the motion for new trial as to the facts are as follows, to-wit:

"That the testimony of Emile Lafleur, a brother of the deceased, who swore that the person who assassinated his deceased brother, Sidney Lafleur, had concealed himself under a small gallery, which connected the kitchen to the gallery of the dwelling house of his brother, and had fired the two shots from that point; that the footprints made at the point where he said the assassin had concealed himself were made by number five, or, at most, number six shoes; that this evidence clearly shows that the confessions which were the only evidence against your movers were false and untrue; that the said confessions were not in any manner and way sustained, corroborated, or verified by any testimony or facts whatever. Wherefore, for the above reasons, petitioners move that a new trial be granted, etc."

The offer of evidence in support of the application thus made was, in effect, a suggestion that the judge should retry the facts which had

been submitted, to, and found by, the jury, and for this court to undertake to reverse his ruling in declining to adopt that suggestion would be to assume a jurisdiction which is prohibited.

"The prohibition to the exercise of the jurisdiction of this court lies to its power to find pure questions of fact, such as were submitted to and found by the *jury*. The inhibition does not extend to questions of law based upon facts submitted to and found by the *judge*. Of course, the court could not review, under any circumstances, the verdict of the jury, on the facts before them on the trial of the accused."

"This court has, therefore, authority to consider the facts *established* on a motion for new trial, when they are such as were not submitted to and passed on by the *jury*, but were considered and decided by the *judge* only." State vs. Nelson, 33 Ann. 845.

"The action of the trial court in refusing a new trial where no special error of law is pointed out, and where no bill of exceptions, with testimony attached, is taken to the overruling of the motion for new trial, will not be reviewed in this court." State vs. Washington, 52 Ann. 445.

We find no error in the ruling complained of, and the judgment appealed from is affirmed.