HIGGINS, Justice.
 

 The accused was charged in a bill of information with the crime of assault with the intent to commit rape. He was tried and found guilty as charged by the jury. Two days later, the district attorney filed
 
 *499
 
 another bill of information charging the defendant with having violated Act 15 of 1928 or with being a second offender. After the motions for a new trial and in arrest of judgment were overruled by the court, defendant was arraigned on the bill charging him with being a second offender and he pleaded guilty thereto. The court sentenced the defendant to serve a term of not less than twenty nor more than forty years at hard labor in the State Penitentiary. He perfected a suspensive appeal and relies upon three bills of exception in asking for the annullment of the verdict and the sentence-of the court.
 

 Bill of exception No. 1 was reserved to the district judge’s ruling that the State had properly laid the foundation for the intro-, duction of the written confession of the defendant, the evidence showing that the confession was free and voluntary and not made as a result of promises, inducements, coercion, threats and physical punishment. Counsel for the defendant contends that the accused proved that the confession was obtained from him by cruel and brutal treatment and that its admission in evidence was a violation of his constitutional rights as set forth in Section 11, Article 1 of the Constitution of 1921.
 

 The record shows that on January 31, 1940, at 3 o’clock p. m., the defendant was arrested on the complaint of the victim of his alleged mistreatment. It appears from the arrest book of the First Precinct Police Station that the accused had been arrested and booked at 6:45 p, m., that day for assault with intent to commit rape on the young woman at 228 South Prieur Street. On February 1, at 5 o’clock a, m., in the-same police station, the accused, in the presence of Detectives William Grosch and. Andrew Arnold, Desk Sergeant Claude S. Morgan and Assistant District Attorney George J. Gullotta, made the following; statement:
 

 - “I would state that my name is Thomas. Calloway, I am 22 years old and I live at 254$ Perdido St., and I work for W. N. Douglas as a coal peddler at N. Miro and Bienville-Sts. Yesterday, Wednesday, January 31,. 1940,1 was selling coal in the neighborhood, of S. Prieur and Palmyra Sts., and while-passing a house where I had sold coal before to a young white woman, I went into this-house and got an ax from the yard and was going to break into the house downstairs and-rob it. When I looked upstairs and seen the white lady that I had sold coal to on the-gallery and asked her if she wanted to buy some coal. She said she wanted a basket for
 
 20‡.
 
 I never had any coal and I tried; to get some from a negro named “Chinee”. He wouldn’t sell me
 
 20‡
 
 worth and said it was
 
 25‡
 
 a basket and I did not get any coal’ for the white- lady but I went back in the-house and the white lady thought I had' some coal for her and I took the ax upstairs to the lady and gave it to her as she-had seen me with the ax and I wanted to get-rid of it. I looked around to see that there was no one in sight and I told the white-lady that I had to go downstairs to get her coal, but the reason I wanted to go downstairs was to lock the gate so no one couldi get in the yard while I was raping the-white lady upstairs. After locking the gate-I went back upstairs and grabbed the white-
 
 *501
 
 ■lady around the arms. She tried to break ■away from me but I hung on to her but she ■drug me in the bathroom and I hit her in the face and knocked her down. I then took my penus out of my pants and the lady told me that if I did not leave her alone she was going to jump out of the window. I ’then hit the white lady two more times in :the face and when I was about to get on her ■and rape her I looked around through the window and seen some painters that were looking at me and the white lady was -hollering all the time. I then got afraid and íshut the door and ran downstairs and ran .to the front and opened the gate and walked -along the street and then I looked back and saw two white boys following me with •sticks and I started to run then. I was then •arrested by some policemen while I was running trying to get away from the boys. I was then taken to the Charity Hospital where the white lady identified me as the negro who had beat her up and tried to rape 'her at her home and I admit that she was •the same white lady who I had beat up and tried to rape in her home about 2:30 yester■day, Wednesday, January 31, 1940. I make ■this statement of my own free will and ac■cord and without any threats or promises ■being made to me.
 

 “(Signed) Thomas Calloway.
 

 “Thomas Calloway (C) age 22
 

 “2543 Perdido Street.”
 

 On February 2, 1940, the defendant was ■charged in an affidavit filed with the clerk -of the criminal district court with the crime •of assault with the intent to- commit rape, the matter receiving No. 98,738 and being allotted to Section “B” of the court. On February 13, one of the assistant district attorneys for the Parish of Orleans filed the bill of information upon which the defendant was later tried' and convicted on April 18, 1940.
 

 Patrolman Hypolite Drouant, Alfred Marshall and Charles Lucien, private citizens, testified that on January 31, 1940, about 3 o’clock p. m., the young woman ran from the house and out of the yard at 228 South Prieur Street screaming and in an hysterical condition; that her face was badly swollen and blood was flowing from her mouth; that she accused the negro (the defendant), who had preceded her, of having beaten her; that the accused had fled but was overtaken and arrested; and'that, after being taken to the Charity Hospital, where the prosecuting witness identified him, he was incarcerated in the First Precinct Police Station.
 

 Detectives Grosch and Arnold and Sergeant Morgan testified that they went on duty on February 1st at 1 o’clock in the morning and that the defendant was taken by Morgan from the cell into the office and was interrogated by Grosch and Arnold, where he confessed, and that his statement was written down by Morgan on the typewriter. All of them positively denied that they in any way induced the accused or made any promises to him, or that they threatened, beat, or subjected him to any ill treatment whatsoever, and that his confession was free and voluntary. Assistant District Attorney Gullotta states that the confession had already been received and written out when he arrived at about 5 o’clock a. m. that morning and that the accused signed it
 
 *503
 
 in his presence without any complaint that he had been in any way threatened, coerced, or mistreated, and that he signed the statement without threats, promises or inducements.
 

 The defendant testified 'that he had been punched and mistreated by Sergeant John of the First Precinct Police Station and by other officers coming in and going out of the station; that Grosch and Arnold, during the early hours of the morning, fired two blank cartridges at him while he was in his cell, which badly frightened him; that he was then taken from his cell and severely beaten in the abdomen and kicked on the legs; and that in fear of his life and of great bodily harm, he made the statement to escape punishment, although it was untrue.
 

 To corroborate his testimony, John Monroe, another prisoner confined in a cell on the upper tier in the First Precinct Police Station, testified that two shots were fired in the cell on the lower or ground floor, that he heard hollering and screaming and that when the defendant was placed in the cell adjoining his on the upper tier, he noticed his (defendant’s) face was “swole up” and that he had been beaten.
 

 To contradict this witness’ testimony, the State offered in evidence the arrest book of the First Precinct Police Station which showed that John Monroe was arrested for petty larceny on February 2, 1940, at 8 a. m., and therefore did not arrive in the First Precinct Police Station until twenty-seven hours after the defendant had made and signed his statement Or confession.
 

 Counsel for the accused contends that the arrest book could have been changed by the police officers to suit their convenience. However, there is no evidence in the record tending to support this view nor does it appear that the State had any reason to anticipate that Monroe would be called as a defense witness. It is also significant that while Monroe says defendant’s face was swollen, the defendant testified that he was punched in the stomach. Counsel also argues that it is a highly suspicious circumstance that detectives who did not arrest the accused questioned him during the early hours of the morning. The officers explained the reason for this was that they came on duty at 1 o’clock in the morning and that they were checking on a rape case that took place about two weeks prior to this occurrence.
 

 The trial judge, in his per curiam, states that he concluded that the proper foundation for the admissibility of the confession as a free and voluntary one had been established by the State, because of the positive testimony of the police officers and the assistant district attorney and the palpable misrepresentations of the defendant and his witness. We find nothing in the record which would justify us in taking issue with him on that score. State v. Doyle, 146 La. 973, 84 So. 315; State v. Rini et al., 151 La. 163, 91 So. 664; State v. Terrell, 175 La. 758, 144 So. 488; State v. Bartley, 34 La.Ann. 147; State v. Edwards, 106 La. 674, 31 So. 308, and State v. Porteau, 52 La.Ann. 476, 26 So. 993.
 

 Counsel for the defendant strenuously insists that to allow police officers to
 
 *505
 
 isolate a prisoner and question him alone places them in a position where they can unscrupulously deprive him of protective constitutional guarantees, for all they have to do is to testify that they did hot make any promises or inducements, or use threats, coercion or physical force to obtain the confession and the accused is powerless to disprove their statements for he has no other witness except himself. We know of no law which prohibits the police from interrogating a prisoner alone, except that they cannot force him to give evidence tending to incriminate himself. It is a criminal offense for an officer to strike and mistreat a prisoner. If a confession is obtained by that means and the officers testify falsely they are subject to charges of perjury. Furthermore, a statement obtained in that manner is inadmissible in evidence. There may not be sufficient safeguards in the law against such conduct by officers, but that is a matter for the legislative department. Where the record refutes the accusations of the defendant against the police and the ruling of the trial judge is therefore supported by the evidence, we should not annul the verdict and sentence simply on the ground of suspicion or general principles, alone. It will not do to say that because an accused repudiates his confession as having been made through promises, inducements, threats, coercion or force that it is inadmissible where the proof shows it was freely and voluntarily given, for his confession would seldom, if ever, be admitted in evidence against him.
 

 Bills of exception Nos. 2 and 3, reserved when the motions for a new trial and in arrest of judgment were overruled, present a question of whether or not the State sufficiently proved the corpus delicti by evidence other than the confession.
 

 It is conceded that the jurisprudence of this State is well settled that the uncorroborated confession of an accused will not of itself sustain a conviction but that there must be other proof of the corpus delicti. State v. Morgan, 157 La. 962, 103 So. 278, 40 A.L.R. 458; Harris v. State, 1916, 72 Fla. 128, 72 So. 520; State v. Jacobs, 1899, 21 R.I. 259, 43 A. 31; Messel v. State, 1911, 176 Ind. 214, 95 N.E. 565; In re Kelly, 1905, 28 Nev. 491, 83 P. 223; Mangum v. United States, 1923, 9 Cir., 289 F. 213; Wharton on Criminal Law, Vol. 1, p. 456, and 40 A.L.R. 458 and 464.
 

 The defendant, in his testimony, repudiated his confession as being untrue and obtained by brutal treatment, but he admitted that he struck the young woman when she refused to pay for the coal which he claimed to have sold to her a few days previously and ordered him out of her small apartment on the second floor of the building and that upon his refusal to go without receiving his money, i. e., 40$5, she slapped him and he shoved her, and she then bit his hand, and that he struck her in the face, and then left the premises.
 

 The young woman’s version of what occurred was that the accused asked her if she wanted to buy some coal and that she ordered some from him, but became suspicious of him because of his conduct and ordered him not to come into the building; that he came upon the second floor to her apartment and grabbed her, saying “I want you”; that she struggled with him and he
 
 *507
 
 then punched her in the face with his fist, knocking her down four times, badly bruising her face, particularly her left eye, and causing her mouth to bleed profusely; and that after he knocked her down the fourth time he opened his clothes and as she continued to scream and resist him, he suddenly departed. On cross-examination the prosecuting witness testified as follows:
 

 “Q. And you were conscious all the time with all of this fighting? Four times he hit you in the jaw and broke your jaw? A. No, sir, I wasn’t unconscious.
 

 “Q. And the last time you say he was buttoning his pants or opening his pants or doing something with his pants? A. He was unbuttoning his clothes and I was screaming.
 

 “Q. What part of his clothes did he unbutton? A. Right here (pointing).
 

 “Q.
 
 And that’s all he did was to unbutton his clothes? A. Yes, sir.
 

 “Q. That’s all.”
 

 Counsel for the defendant states that if it has been proved that the defendant was guilty of any crime, it should have been “assault, beating and wounding” and not “assault with intent to rape.” He points out that the young woman immediately after the occurrence told the witnesses to apprehend the accused because he had beaten her, but she did not say that he had attempted to rape her. The patrolman who arrested the accused stated that, after bringing him before the young woman at the Charity Hospital where he interviewed her and she identified the defendant, he booked the defendant with the charge for which he was subsequently tried. The arrest book of the First Precinct Police Station corroborated his testimony as it shows that the accused was arrested and booked with attempt to commit rape on the prosecuting witness at 228 South Prieur Street, the entry in the book being made on January 31, 1940, at 6:45 p. m.
 

 The facts and circumstances in the record which tend to show that the defendant intended to commit the crime charged, and not assault and batterjr or assault with intent to commit robbery, were:
 

 (1) That he went upstairs into the young woman’s apartment after she had told him not to come into the building; (2) that he said “I want you” and grabbed her.; (3) that he pushed her into the bathroom; (4) that he struck her several hard blows in the face with his fist, knocking her down each time’ and causing serious and painful injuries; and (S) that he then unbuttoned his pants.
 

 It must be borne in mind that the young woman’s testimony is fully corroborated in every respect, except as to what happened between the parties inside of the building. However, the witnesses do state that she was hollering and screaming while in there and that she followed the defendant almost immediately out of the yard; with her face badly injured and bleeding and in an exhausted and hysterical condition, and accused him of having beaten her. The fact that she was promptly sent to the hospital on account of her injuries and condition explains why she did not go into details as to what happened until later at the hospital.
 

 
 *509
 
 It is our opinion that the corpus delicti of the crime charged to the defendant was sufficiently proved by evidence independent of the confession. •
 

 For the reasons assigned the verdict of the jury and the sentence of the court are affirmed.
 

 O’NIELL, C. J., dissents from the ruling on bill of exceptions No. 1.