108 So.2d 233

### STATE of Louisiana

v.

### James BROWN and Lucille Aymond.

No. 44241.

Jan. 12, 1959.

---

Harold J. Brouillette, Maxwell J. Bordelon, Marksville, for defendants-appellants.

Jack P. F. Gremillion, Atty. Gen., M. E. Culligan, Asst. Atty. Gen., Charles A. Riddle, Jr., Dist. Atty., Marksville, for plaintiff-appellee.

HAWTHORNE, Justice.

Defendants James Brown and Lucille Aymond were charged in a bill of indictment with the crime of miscegenation "in that they did habitually cohabit with each other, he being of the Negro race and she being of the White race, they having knowledge of their difference in race". They were tried jointly, convicted, and sentenced to serve one year in the state penitentiary. Both have appealed.

The statute under which appellants were charged, Article 79 of the Louisiana Criminal Code, provides:

"Miscegenation is the marriage or habitual cohabitation with knowledge of their difference in race, between a person of the Caucasian or white race and a person of the colored or negro race."

The statute then provides that whoever commits the crime miscegenation shall be imprisoned, with or without hard labor, for not more than five years.

Appellants filed a motion to quash the indictment on the ground that the statute under which they were being prosecuted was unconstitutional because it violates the Equal Protection and the Due Process provisions of the Louisiana and United States Constitutions, in that it make a particular course of conduct a crime when committed by persons of certain races only. The motion to quash was overruled, and Bill of Exception No. 1 was reserved.

■■ As we view the matter, marriage is a status controlled by the states, and statutes prohibiting intermarriage or cohabitation between persons of different races in no way violate the Equal Protec-

tion clauses of the state and federal Constitutions. See 16A C.J.S. Constitutional Law §§ 541, 543, pp. 474, 479–480. A state statute which prohibits intermarriage or cohabitation between members of different races we think falls squarely within the police power of the state, which has an interest in maintaining the purity of the races and in preventing the propagation of half-breed children. Such children have difficulty in being accepted by society, and there is no doubt that children in such a situation are burdened, as has been said in another connection, with "a feeling of inferiority as to their status in the community that may affect their hearts and minds in a way unlikely ever to be undone".[1]

The United States Supreme Court had occasion to consider the identical question presented here in Pace v. State of Alabama, 106 U.S. 583, 1 S.Ct. 637, 27 L.Ed. 207. In that case a Negro man and a white woman were indicted under a provision of the Code of Alabama for living together in a state of adultery or fornication. The Supreme Court, in considering whether the Alabama statute violated the Equal Protection clause of the Constitution and in holding that it did not, stated that the punishment of each offending person whether white or black is the same. This is true of the Louisiana statute here involved.

The next bill which we shall consider has merit and in our view entitles the appellants to a new trial. According to the bill the trial judge in charging the jury defined the term "cohabitation" as "access for the purpose of sexual intercourse", and defined "habitual cohabitation" as "access for the purpose of sexual intercourse as a matter of habit". Timely objection was made to this charge, and a bill of exception perfected.

So far as we can ascertain, this court has never had occasion to interpret the words "habitual cohabitation" as found in Article 79 of the Criminal Code. In interpreting these words we are to be governed by Article 3 of that Code, which provides:

"The articles of this Code cannot be extended by analogy so as to create crimes not provided for herein; however, in order to promote justice and to effect the objects of the law, all of its provisions shall be given a genuine construction, according to the fair import of their words, taken in their usual sense, in connection with the context, and with reference to the purposes of the provision."

We recognize the fact that the commonly accepted definition of the word "cohabit" is to "dwell together". However, in defining the meaning of the word "cohabi-

---

1. This quotation is from Brown v. Board of Education of Topeka, 347 U.S. 483, 74 S.Ct. 686, 691, 98 L.Ed. 873.

tation" as used in the statute here in question we must take into consideration the context in which the word is used in the statute and the purposes of the law's provisions.

Article 79 of the Criminal Code is based upon Act 206 of 1910, a concubinage statute. To us the word "cohabitation" as used in Article 79 means sexual relations or acts of sexual intercourse, and under this statute in our view, just as under the concubinage statute, if a person of the Caucasian and a person of the Negro race were living together under the same roof, it would constitute evidence of the crime of miscegenation for this would be strong, if not convincing, evidence of habitual intercourse.

Article 79 is found under that subpart of the Code dealing with "sex offenses affecting family". The preceding article in that same subpart, Article 78, provides that incest is the marriage to, or *cohabitation* with, any ascendant or descendant, brother or sister, uncle or niece, aunt or nephew, with knowledge of their relationship. This court as far back as 1906 in the case of State v. Freddy, 117 La. 121, 41 So. 436, 437, had occasion to consider the word "cohabit" as used in the incest statute then in effect, and concluded in a well reasoned opinion that the meaning of the word "cohabit" was "simply that of sexual intercourse". The word "cohabitation" in the present incest statute has the same meaning, and we are convinced that its meaning in Article 79 is also the same.

In the miscegenation statute, Article 79, the word "cohabitation" is preceded by the adjective "habitual", and the crime denounced is the "habitual cohabitation with knowledge", etc. Webster's Dictionary defines "habitual" thus: "Of the nature of a habit; according to habit; established by, or repeated by force of, habit; customary; as, the *habitual* practice of sin; *habitual* drunkenness." As we see the matter, the words "habitual cohabitation" as used in Article 79 simply mean customary or repeated acts of sexual intercourse, and not merely an isolated case of intercourse.

Obviously, when the trial judge charged the jury that "habitual cohabitation" meant "access for the purpose of sexual intercourse as a matter of habit", he committed reversible error, for under this charge an accused could be convicted of the crime of miscegenation without any evidence that sexual intercourse had ever occurred. Such is not the law.

Since we are remanding the case for a new trial, there is another bill of exception which we should discuss because the circumstances under which it was reserved are likely to recur at a subsequent trial of these defendants. This is Bill of Exception No. 2.

The defendants were jointly tried, and at the trial the State offered in evidence and relied on a confession made by each. One of the grounds urged in defendants' motion for a new trial is that the State failed to prove the corpus delicti, and that the confessions of the defendants may not, in and of themselves, serve as a basis of a legal conviction; or, stated somewhat differently, that the confession of an accused standing alone will not warrant a legal conviction.

· In the trial of every criminal case the State, to warrant a legal conviction of an accused, must prove the corpus delicti, or the fact that a crime has been committed. Without such proof no conviction will be permitted to stand. Underhill, Criminal Evidence, sec. 35, p. 42 (4th ed. 1935), states the rule as follows:

"Proof of the corpus delicti is essential to a conviction, must be proved beyond a reasonable doubt, and must exclude every hypothesis other than that a crime was committed in order to convict."

The same authority in discussing the fact that the corpus delicti may be proved by circumstantial evidence says:

"The corpus delicti, and all the elements thereof, may be proved by circumstantial evidence, from which the jury may reasonably infer that a crime has been committed. Such evidence must exclude every reasonable hypothesis except guilt, and be convincing to a moral certainty; and such proof of corpus delicti must be most convincing and satisfactory proof compatible with the nature of the case." Id., sec. 37, p. 45.

 Suspicion, rumor, gossip, or mere hearsay evidence is not sufficient to establish the proof of corpus delicti, and as to confessions we think 23 C.J.S. Criminal Law § 916, p. 183, clearly sets forth the rule of law which prevails in this state thus:

"Extrajudicial admissions, declarations, or confessions of accused are not of themselves sufficient to establish the corpus delicti. Evidence aliunde such admissions, declarations, or confession *is required* in order to establish · the corpus delicti." (Italics ours.)

See also State v. Morgan, 157 La. 962, 103 So. 278, 40 A.L.R. 458; State v. Calloway, 196 La. 496, 199 So. 403.

· In 22 C.J.S. Criminal Law § 839, pp. 1471–1472, it is stated: "As a general rule it is required that the corpus delicti must first have been established before the confession of accused may be admissible, although by some authorities it is held that the order of proof is immaterial or is within the discretion of the trial court and that, if a confession is admitted and evidence which would have been sufficient to authorize its admission is subsequently introduced, the error, if any, is cured."

■ We think it is better and much fairer to follow the general rule in this state and *to require the establishment of the corpus delicti before the confessions of accused are admitted in evidence.*

Again, "* * * it is the general rule both under statutes and at common law that an extrajudicial confession does not warrant a conviction unless it is corroborated by independent evidence of the corpus delicti". 22 C.J.S. Criminal Law § 839, p. 1472.

In State v. Morgan, supra [157 La. 962, 103 So. 279], the defendant was charged with the offense of carnal knowledge, and in that case the State relied on a confession made by the accused. In reversing the conviction and remanding the case for a new trial this court said:

"The overwhelming weight of authority is to the effect that there cannot be a lawful conviction of a crime unless the corpus delicti is established; that is to say, unless it is shown that a crime has been committed by some one.

"Mr. Wharton, in his work on Criminal Law (11th Ed. vol. 1, p. 449, § 357), says:

" 'The general rule in this country is that the corpus delicti cannot be established by the confession of the accused, unsupported by corroborative evidence, or proof aliunde, and a conviction had upon such uncorroborated evidence cannot be sustained.'

"In A. & E. E. of Law, vol. 6, p. 582, the rule in the United States is stated thus:

" 'But in this country the rule is well established that a conviction cannot be had on the extrajudicial confession of the defendant, unless corroborated by proof aliunde of the corpus delicti.'

"And this seems to be the established rule of jurisprudence in a majority of the states of the Union.

"In Bines v. State, 118 Ga. 320, 45 S.E. 376, 68 L.R.A. 33, the court said:

" 'Before there can be a lawful conviction of a crime, the corpus delicti, that is, that the crime charged has been committed by someone, must be proved.

" 'The mere confession of the accused is not sufficient to establish the corpus delicti.' 'This rule,' says the court, 'is well established, in this country at least.'

"The same rule prevails in Nebraska:

" 'There must be other evidence that a crime has actually been committed, the confession being used to connect the accused with the crime' proved. Priest v. State, 10 Neb. 393, 6 N.W. 468; Smith v. State, 17 Neb. 358, 22 N.W. 780.

"In Stringfellow v. State, 26 Miss. 157, 59 Am.Dec. 247, the court of Mississippi said:

" 'Where the corpus delicti is not proven by independent testimony,' extrajudicial

confessions of the accused 'are insufficient to warrant a conviction.'

\* \* \* \* \* \* \* \*

"The rule thus laid down is by no means universal. There are jurisdictions which hold to the contrary. So far as our research has gone, we have not been able to find a case in our own reports which passes upon the question.

"We prefer, however, to follow the rule, as definitely established—as we take it—by a great majority of the states, to the effect that an accused party cannot be legally convicted on his own uncorroborated confession without proof that a crime has been committed; in other words, without proof of the corpus delicti.

\* \* \* \* \* \* \* \*

"The counsel for the state cite the cases holding that the court will not review the sufficiency of the evidence if there was any evidence at all of the fact essential to conviction.

"We are not unmindful of the rule stated. It is not a question here of the sufficiency of the evidence. But the question is: Can an accused be legally convicted without any evidence at all, independent of the confession, establishing the fact that a crime had been committed?

"This presents clearly a question of law. \* \* \*

"Beyond these confessions there was no other evidence, 'literally none at all,' to show that the crime had been committed, either by the accused or by any one else. \* \* \*"

The holding in the Morgan case was subsequently approved by this court in State v. Calloway, supra [196 La. 496, 199 So. 406], in which we said:

"It is conceded that the jurisprudence of this State is well settled that the uncorroborated confession of an accused will not of itself sustain a conviction but that there must be other proof of the corpus delicti."

■ Although we have discussed the law applicable to this bill of exception, nevertheless we do not think that under the jurisprudence we can review the evidence taken at the trial in order to determine whether the corpus delicti has been established in this case, for although the evidence is incorporated in the transcript, it is not attached to and made a part of a bill of exception. In State v. Gaines, 223 La. 711, 66 So.2d 618, 620, this court said:

"This case was appealed from the Criminal District Court for the Parish of Orleans, and, as is customary in transcripts in appeals from that court, all of the testimony taken during the trial has been placed in the transcript. Since all the testimony relating to the offering in evidence of the articles is in the transcript, counsel may have expected that we would consider it to determine whether the rul-

ing of the trial judge on the admissibility of this evidence was correct. Any such expectation, of course, is futile, because for us to consider the testimony, although in the transcript, it must be presented in a bill of exception perfected in the manner prescribed by our Code of Criminal Procedure and the jurisprudence of this court.

"Under Article 498 of the Code of Criminal Procedure, LSA–R.S. 15:498, the bill of exception is grounded on the objection made to the ruling of the court on some purely incidental question arising during the progress of the trial, and involves the correctness of the conclusion drawn by the court *from the facts recited in the bill.* Under Article 500, LSA–R.S. 15:500, the bill of exception must show *the circumstances* under which, and *the evidence* upon which, the ruling complained of is based. For us to consider the testimony, counsel would have to incorporate the testimony in, or annex it to, or make it a part of, the bill of exception.

"We said in State v. Honeycutt, 218 La. 362, 49 So.2d 610, that it is well settled in the jurisprudence of this court that in a criminal case, even though the testimony may be taken, transcribed, and placed in the transcript, it cannot be considered by us and has no proper place in the record unless it is annexed to, and made a part of, a bill of exception timely perfected."

The convictions and sentences of the appellants are reversed and set aside, and the case is remanded to the district court for a new trial.

108 So.2d 516