ARMSTRONG, Judge.
The defendant, Carl L. McBride, was charged with a violation of LSA-R.S. 14:67, relative to the offense of theft of property valued at $500.00 or more. After trial, a six member jury found him guilty as charged. His motion for new trial was denied, and he was sentenced as a multiple offender to serve ten years at hard labor. It is from this conviction and sentence that the defendant has appealed.
The record reflects that sometime between February 17 and 23, 1984 two pieces of jewelry, a gold and diamond heart necklace (worth over $800.00) and a gold chain holding a medallion engraved with the *224 name “Sissy” written in Arabic, were taken from the home of Wendell and Marion “Sissy” Barrios in Belle Chasse. Shortly thereafter, investigating officers found the jewelry at a pawn shop in Jefferson Parish. A check of the shop’s records revealed that on February 23, 1984 the jewelry was pawned by the defendant Carl McBride, Mrs. Barrios’ brother.
After discovering the jewelry, Plaque-mines Parish deputies informed Mrs. Barrios at her mother’s house, in the presence of her mother and the defendant, McBride, that her jewelry had been located in a pawn shop and that they had the name of the person who had pawned it. At that point, McBride announced that he had taken the jewelry. McBride was arrested, and he later gave a written statement wherein he admitted that he had taken the jewelry from his sister’s jewelry box without permission and had pawned the jewelry in exchange for $100.00.
At trial, Mrs. Barrios testified that she had given McBride the keys to her house while she was in the hospital. Mrs. Barrios also testified that because McBride was babysitting her daughter during this time, she gave him permission to' take from the house anything that her daughter needed. Mrs. Barrios admitted that she was unaware that McBride had taken the jewelry, but she testified that she had no objection to McBride taking the jewelry and pawning it. She stated that the gold and diamond heart was a gift from her husband and the “Sissy” medallion was a gift she had received prior to her marriage.
We have reviewed the record for errors patent and have found one. The minute entry does not reflect that the defendant waived his right to a twenty-four hour delay between the denial of his motion for new trial and his sentencing. The transcript of sentencing indicates that after denying defendant’s motion for new trial, the trial court asked defendant if he was ready to be sentenced. At that moment the prosecutor interrupted with another motion which was handled. The court then sentenced the appellant without objection. The defendant does not assign this as error or allege any prejudice. Moreover, we do not find any prejudice flowing from this error and therefore find the error to be harmless. State v. Wormser, 467 So.2d 58 (La.App. 4th Cir.1985), writ den. 474 So.2d 946 (La.1985); State v. Dauzart, 461 So.2d 382 (La.App. 4th Cir.1984).
In his first assignment of error, the defendant alleges that there was insufficient evidence presented at trial to support his conviction for theft. Specifically, he argues that the State did not prove that the jewelry was taken without his sister’s consent and that he intended to deprive her of the jewelry permanently. We disagree.
In reviewing sufficiency of evidence, the appellate court must determine whether viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the defendant guilty beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); State v. Andrews, 452 So.2d 687 (La.1984). Where the conviction is based upon circumstantial evidence, R.S. 15:438 provides that such evidence must exclude every reasonable hypothesis of innocence. State v. Camp, 446 So.2d 1207 (La.1984); State v. Wright, 445 So.2d 1198 (La.1984). R.S. 15:438 does not establish a stricter standard of review than the more general rational juror’s reasonable doubt formula; it is merely an evidentiary guide for the jury when considering circumstantial evidence. State v. Porretto, 468 So.2d 1142 (La.1985). “When a case involves circumstantial evidence and the jury reasonably rejects the hypothesis of innocence presented by the defendant..., that hypothesis fails, and the defendant is guilty unless there is another hypothesis which raises a reasonable doubt.” State v. John Langford, 483 So.2d 979 at 984, (La.1986), quoting from State v. Captville, 448 So.2d 676, 680 (La.1984).
The defendant herein was convicted of theft which is (1) the misappropriation or taking, (2) of anything of value, (3) *225 which belongs to another, (4) with the specific intent to deprive the other permanently of whatever is taken or misappropriated. The taking or misappropriation must be done either without the consent of the owner or by means of fraudulent conduct, practices, or representations. R.S. 14:67; State v. Hoffer, 420 So.2d 1090 (La.1982).
Here, the defendant admits that the State proved that he took the jewelry from his sister’s house. However, he argues that the State did not prove that the taking was without his sister’s consent because his sister had given him the keys to her house and had told him to take anything from the house that her daughter needed. In addition, Mrs. Barrios testified at trial that although she did not know that McBride had taken the jewelry, she would have given her consent to the taking had she known about it. We disagree.
It is quite clear that Mrs. Barrios was unaware that the jewelry was taken by McBride and was in fact relieved when she was informed that her jewelry was found. In addition, McBride told the police that he had taken the jewelry without his sister’s permission. Thus, at the time of the theft, the taking was made without the knowledge or consent of the owner.
In State v. Langford, supra, the defendant was convicted of theft of over $800,-000.00 from a bank which mistakenly assigned unlimited overdraft protection to his checking account. The defendant contended that his taking of the money was with the bank’s consent because it continued to honor his overdrawn cheeks. Both this court[1] and the Supreme Court rejected this idea, noting that it was only by error that the defendant’s checks were covered because no conscious decision was ever made by anyone at the bank to honor these overdrawn checks. The Court held that a rational trier of fact could have concluded beyond a reasonable doubt that the taking of the bank’s money was non-consensual.
In State v. Natalie, 172 La. 709, 135 So. 34 (1931), the owner of a business was informed by the police that his business might be burglarized, which it was a few nights later. The defendant argued that because the owner was aware of the potential burglary and took no additional precautions against it, the owner somehow consented to the taking. The court disagreed, noting:
[The owner] did not in any sense induce or encourage the commission of the crime, but only refrained from interfering with the carrying out by the parties of their previously formed criminal designs ... [t]he criminal design and intent to take the goods originated, independently, in the minds of these who took them, and [the owner] did no more than passively assent to their carrying out of their designs. Id. 135 So. at 36.
In State v. Darlene Saucier, 485 So.2d 584, p. 586 (La.App. 4th Cir.1986) this court held that the intent to deprive the owner of his goods permanently must be present at the time alleged in the bill of information. In the instant case the bill of information alleged that the theft, the taking without consent, occurred on February 23, 1984, at a time when defendant did not have his sister’s consent to take the jewelry.
The defendant also argues that the State did not prove an intent to deprive his sister of the jewelry permanently because he notes that instead of “fencing” the jewelry, he took it to a pawn shop where he gave his correct name and address. Defendant notes that he did not flee after receiving the pawn money and that he gave the pawn ticket to his mother. He further states: “The jewelry would not have been gone for any length of time if [Mrs. Barrios] had been permitted to pay the associated fees as she tried to do.”
Although proof of a defendant’s intent to permanently deprive another of a thing of value is a question of fact, it need not be proven as a fact, but may be inferred from circumstances of the transaction. LSA-R.S. 15:445; State v. McKin *226 non, 317 So.2d 184 (La.1975); State v. Robinson, 463 So.2d 663 (La.App. 4th Cir.1985).
Mrs. Barrios did not induce or encourage McBride to take the jewelry. The “criminal design and intent” to take the jewelry rested entirely with McBride; Mrs. Barrios did not even know that he had taken the jewelry until she was so informed by the parish deputies. Although Mrs. Barrios testified that she would have consented to the taking if she had known about it, unlike the victims in Langford who never consented to the taking, the record reflects that Mrs. Barrios did not inform the investigating officers of her alleged consent either before or after the defendant’s arrest.
The length of time the jewelry was gone or the fact that Mrs. Barrios could have retrieved it by paying money for it has no bearing on whether McBride intended to deprive her of it permanently. Also, even though he insists he gave the pawn ticket to his mother, there is no indication that he told her the ticket was for her daughter’s stolen jewelry. Furthermore, McBride did not tell Mrs. Barrios that he had taken her jewelry until he realized that the police officers were about to tell her he had pawned it. Thus, viewing the evidence in the light most favorable to the prosecution, the jury could have found that the State proved all the elements of theft and found McBride guilty beyond a reasonable doubt.
In his second assignment of error, the defendant contends that the State erred by introducing his confession into evidence without first “establishing the corpus delicti” of the theft. The defendant argues that the state did not first prove the elements of theft and that he committed the theft before it admitted his confession into evidence. He cites State v. Brown, 236 La. 562, 108 So.2d 233 (1959), for this argument, which he contends held that the State must establish the corpus delicti of the crime before confessions may be admitted into evidence. However, in State v. Romero, 369 So.2d 1342 (La.1979), the Court held that although the standard set forth in Brown “may be the better practice ... the proof of the corpus delicti is not required as a prior condition for admission into evidence of a confession, so long as proof of the corpus delicti is subsequently established during trial.” Id. at 1343. As noted above the State subsequently proved the elements of theft and the appellant’s culpability. We therefore conclude that defendant’s second assignment of error lacks merit.
For the foregoing reasons, the defendant’s conviction and sentence are affirmed.
AFFIRMED.

. See State v. Langford, 467 So.2d 41 (La.App. 4th Cir.1985).