Judge Daniel L. Dysart
liThe State of Louisiana appeals the trial court ruling granting William Kinard’s Motion to Quash. In a separate writ application consolidated with this appeal, the States seeks review of the trial court’s ruling suppressing two recorded statements given by Kinard.
For the reasons that follow, we reverse the grant of the Motion to Quash. We further grant the State’s writ application, maintain the trial court’s ruling as to the January 2, 2016 statement, and reverse the trial court’s ruling as to the suppression of the January 11, 2016 statement.
BACKGROUND:
William Kinard was interviewed by the New Orleans Police on four separate occasions[1] following the murder of his girlfriend on New Year’s Eve of 2015. During an interview on January 2, 2016, Kinard admitted that he possessed a firearm on New Year’s Eve, and that he fired the weapon into the ground somewhere in New. Orleans East. He made a .similar statement on January 11, 2016. Based on these statements, a warrant was issued for Kinard’s arrest. He was ^subsequently charged by bill of information with one count of intentionally or criminally negligently discharging a firearm (La. R.S. 14:94A), and one count of being a felon in possession of a firearm (La. R.S. 14:95.1), and was arrested on January 13, 2016.
Kinard filed a motion for suppression of statements and a motion to quash the bill of information. Following a hearing, the trial court granted his motions to suppress and to quash the bill of information. This State seeks review of those rulings.
DISCUSSION:
Motion to Quash:
In its first assignment of error, the State argues that the trial court erred in granting Kinard’s motion to quash the bill of information. Kinard argues that the ground for granting the motion to quash is that a defendant cannot be convicted based upon a confession without corroborating evidence, commonly known as the corpus delicti rule. See, e.g., State v. Cruz, 455 So.2d 1351 (La. 1984), and State v. Brown, 236 La. 562, 108 So.2d 233 (La. 1959). He further argues the applicability of Smith v. U.S., 348 U.S. 147, 153, 75 S.Ct. 194, 197, 99 L.Ed. 192 (1954); wherein the United States Supreme Court noted that a confes *112 sion could be unreliable when coerced or induced “if it is extracted from one who is under the pressure of a police investigation.”
| .¡The facts reveal that Kinard was interviewed four times by the New Orleans Police Department; however, the only two relevant interviews for the purpose of this appeal took place on January 2, 2016, and January 11, 2016.
The January 2, 2016 interview was conducted shortly after the murder. The recording reflects that Kinard is crying throughout most of the interview as he describes the events surrounding the shooting of his girlfriend. Two minutes into the interview, the detectives advise him that he is not a subject and is free to leave at any time. At the nineteen minute mark, Kinard admits to firing a weapon into the ground on New Year’s Eve, but offers that he did not fire a weapon the day of the interview (the day of the murder). Kinard asks the detectives several times if he is free to leave, asking specifically, “Can I leave? I gotta go see my girl.” However, the detective tells him he will not be able to see Myeisha (the victim) at that time. The detectives continue to question him, indicating that the more he cooperates, the more likely they are to find the person who killed his girlfriend. After about thirty-five minutes, the detectives ask him if he is willing to give a gunshot residue test, explaining that they will let him go right after the test is completed.
Nine days later, Kinard was again interviewed on January 11, 2016, but was given his Miranda rights before the interview began. One detective explains to Kinard that he is in custody for a parole violation. Several minutes into the interview, one of the detectives tells Kinard that the police know he killed his girlfriend, but they do not know why. During the remainder of the interview, the |4detectives use various tactics to get Kinard to confess to his girlfriend’s murder, but he does not.
At the motion hearing, the interviewing detective conceded that when Kinard requested to leave, he answered with, “We need to talk to you some more.”
The trial court acknowledged on the record that it was granting the defendant’s motion to quash on corpus delicti grounds.
Louisiana Code Criminal Procedure art. 532(5) provides that a motion to quash may be based on the ground that “[a] bill of particulars has shown a ground for quashing the indictment under Article 485.” La. C.Cr.P. art. 485 provides:
If it appears from the bill of particulars furnished under Article 484, together with any particulars appearing in the indictment, that the offense charged in the indictment was not committed, or that the defendant did not commit it, or that there is a ground for quashing the indictment, the court may on its own motion, and on motion of the defendant shall, order that the indictment be quashed unless the defect is cured. The defect will be cured if the district attorney furnishes, within a period fixed by the court and not to exceed three days from the order, another bill of particulars which either by itself or together with any particulars appearing in the indictment so states the particulars as to make it appear that the offense charged was committed by the defendant, or that there is no ground for quashing the indictment, as the case may be.
The trial court found that the evidence provided by the State, i.e., 911 calls that shots had been fired in New Orleans East on the night in question, was insufficient to prove that Kinard committed the crime to which he confessed. The judge held: “I think the defense is right. This is a confes *113 sion without any sort of evidence of a—the crime actually being committed.”
|BThe ultimate issue of whether a defendant is guilty of the crime with which he is charged is a matter for trial. State v. Guillott, 12-0652, pp. 5-6 (La.App. 4 Cir. 2/20/13), 155 So.3d 551, citing State v. Schmolke, 12-0406, p. 3 (La.App. 4 Cir. 1/16/13), 108 So.3d 296, 298 (“So long as the facts accepted as true can conceivably satisfy an essential element of the crime, the accused person can be compelled to stand trial for the charge.”).
Kinard argues that Guillot does not apply as that case did not involve a bill of particulars, La. C.Cr.P. art. 485, or an admission by the State that the only evidence of the crime was the defendant’s confession. In Guillot, the defendant was charged as being an accessory after the fact, relative to second degree murder. At a motion to suppress statement hearing, a police officer and a lay witness testified. The trial court found probable cause and denied the motion to suppress; however, the trial court later granted the defendant’s motion to quash.
On appeal, this Court noted that the defendant’s argument was that the State did not prove its case at the hearing on the motion to quash; however, the Court ruled that the issue of Guillot’s guilt was a matter for trial. The Court explained that it reviewed the bill of information and bill of particulars, and accepting the facts alleged therein as true, found sufficient facts which, if found credible by the trier-of-fact, could support a conviction. The Court distinguished State v. Brown, 236 La. 562, 108 So.2d 233 (La. 1959), in that Brown did not involve a motion to |fiquash, but rather a conviction.[2] Here, all of the cases cited by Kinard involve convictions, not motions to quash.
In Guillot, we stated:
In considering a motion to quash, a court must accept as true the facts contained in the bill of information and in the bills of particulars, and determine as a matter of law and from the face of the pleadings, whether a crime has been charged; while evidence may be adduced, such may not include a defense on the merits.
Guillott, 12-0652, p. 3, 155 So.3d at 553.
By deciding that the evidence presented by the State is insufficient to warrant a conviction, the trial court is improperly weighing the evidence. The trial court’s only duty in regards to a motion to quash is to decide whether or not a crime has been charged. Accordingly, pursuant to Guillot, we find that the trial court erred in granting the motion to quash on corpus delicti grounds.
Motion to Suppress Statements:
In its second assignment of error, the State argues that the trial court erred in granting Kinard’s motion to suppress his statements.
It is well settled that an appellate court reviewing a trial court’s ruling on a motion to suppress applies a clearly erroneous standard to findings of fact, but reviews the trial court’s ultimate decision de novo. State v. Everett, 13-0322, p. 4 (La.App. 4 Cir. 3/26/14), 156 So.3d 705, 709 (citing State v. Dorsey, 00-2331, p. 1 (La.App. 4 Cir. 1/24/01), 779 So.2d 1008-09). As to mixed questions of law and fact, the appellate court reviews the underlying facts on an abuse of discretion 17standard, but reviews conclusions to be drawn from those facts de novo. Everett, 13-0322, pp. 4-5, 156 So.3d at 709.
*114 Here, the trial court noted that it was undisputed that Kinard was not Miran-dized as to the January 2, 2016, interview. The trial court next considered whether Kinard was in custody or was free to leave. After reviewing the facts, the trial .court determined that Kinard was indeed subject to a custodial interrogation. The State asserts that Kinard was free to leave at any time.
In State v. Hankton, 12-0466 (La.App. 4 Cir. 4/30/14), 140 So.3d 398, this Court recognized the following guidelines to determine whether a defendant was subject to a custodial interrogation:
The Fourth Amendment to the United States Constitution and Article I, [§ ] 5 of the Louisiana Constitution protect persons against unreasonable searches and seizures. A .defendant adversely affected may move to suppress any statement from use at the trial on the merits on the ground that it was unconstitutionally obtained. La. C.Cr.P. art. 703 A. A trial court’s ruling on a motion to suppress the evidence is entitled to great weight, considering the district court’s opportunity to observe the witnesses and weigh the credibility of their testimony. State v. Robinson, 09-1269, p. 6 (La.App. 4 Cir. 5/12/10), 38 So.3d 1138, 1141, citing State v. Mims, 98-2572, p. 3 (La.App. 4 Cir. 9/22/99), 752 So.2d 192, 193-94.
The obligation to provide Miranda warnings attaches only when a person is questioned by law enforcement after he has been taken “into custody or otherwise deprived of his freedom of action in any significant way.” Miranda[ v. Arizona], supra, 384 U.S. [436] at 444, 86 S.Ct. [1602] at 1612[, 16 L.Ed.2d 694 (1966) ]. Custody is decided by two distinct inquiries: an objective assessment of the circumstances surrounding the interrogation to determine whether there is a formal arrest; and, second, an evaluation of how a reasonable person in the position of the interviewee would gauge the breadth of his freedom of action. Stansbury v. California, 511 U.S. 318, 322, 114 S.Ct. 1526, 1529, 128 L.Ed.2d 293 (1994), (citing California v. Beheler, 463 U.S. 1121, 1125, 103 S.Ct. 3517, 3520, 77 L.Ed.2d 1275 (1983)(per curiam)); State v. Manning, 03-1982, p. 24 (La. 10/19/04), 885 So.2d 1044, 1074 (citations omitted).
12-0466, pp. 12-13, 140 So.3d at 407.
It is undisputed that Kinard did not receive Miranda warnings during the January 2, 2016, interview. He asked the detectives on several occasions if he was free to leave, but the detectives did not acknowledge his requests. We recognize that the detectives told Kinard he was not under arrest; however, after reviewing the interview in its entirety, it is clear that a reasonable person would not have believed that he was free to leave. See State in Interest of W.B., 16-0642, p. 12 (La.App. 4 Cir. 12/7/16), 206 So.3d 974, 979.
The trial court also made a finding that Kinard’s January 2, 2016 statement was involuntary because he can be heard crying during the interview. Although it is quite evident that the defendant is audibly distraught during the questioning, it is insufficient to cause his statement to be involuntary or inadmissible. State v. Lundy, 15-0776 (La.App. 4 Cir. 5/25/16), 195 So.3d 587. However, we find that based upon the totality of the circumstances, the January 2, 2016 interview was a custodial interrogation, and since at no time was Kinard ever read his Miranda rights, the confession was properly suppressed.
In its third assignment of error, the State argues that Kinard’s January 11, 2016 statement was not the fruit of the poisonous tree, and that the trial court erred in relying on Missouri v. Seibert, *115 542 U.S. 600, 124 S.Ct. 2601, 159 L.Ed.2d 643 (2004) to find that 13as the January 2, 2016 statement was not voluntary, the subsequent statement on January 11, 2016 was equally tainted.
Seibert involved a two-stage interview of a murder suspect—the first stage during which the defendant confessed was about thirty minutes long and was conducted without Miranda, warnings; the second stage was twenty minutes later, with Miranda warnings and a signed waiver of rights form. The defendant confessed again. The Supreme Court held that both statements were inadmissible as a midstream recitation of Miranda warnings could not comply with the object of Miranda, i.e., that the suspect is aware that he has a real choice about giving an admissible statement at that point. Seibert, 542 U.S. at 612, 124 S.Ct. at 2610.
We find the holding of Missouri v. Seibert applies only to a narrow set of facts wherein the pre-warning and post-warning statements occur in close proximity in time. In this case, Kinard provided the pre-warning statement on January 2, 2016, and the post-warning statement on January 11, 2016. Given the nine day lapse between his initial statement and the January 11, 2016 statement when he was given his Miranda rights, it is inconceivable that these two statements would be considered as one.
In Oregon v. Elstad, 470 U.S. 298, 309, 105 S.Ct. 1285, 1293, 84 L.Ed.2d 222 (1985), the Supreme Court found that an initial confession was inadmissible as Miranda warnings had not been given, but a subsequent confession given after Miranda warnings were given, was admissible as the admission of guilt was voluntary.
Kinard further argues that the trial court should have also suppressed his 1 ^January 11, 2016 statements pursuant to La. R.S. 15:451, because he was under fear, duress, intimidation, menaces, threats, inducements or promises when the officers told him that he was a liar, had no conscience, and was subhuman.
Louisiana Code Criminal Procedure art. 703D provides that the State “shall have the burden of proving the admissibility of a purported confession or statement by the defendant.” Although Kinard sounds distraught during other parts of the interview, he sounds calm when answering the detective’s questions regarding his firing a weapon on New Year’s Eve when he was on parole. Additionally, although the detectives repeatedly ask him if he would submit to a lie detector test, the detectives make no threats, inducements, or promises to him. Kinard does not show that the January 11, 2016 was involuntary pursuant to La. R.S. 15:451.
Finally, Kinard argues that he sought to end questioning during the January 11, 2016 interview by saying, ‘You know what? Is this matter over? Y’all can take me. Because I’m not about to let y’all sit up here and use that, talking about...” He relies on State v. Taylor, 01-1638, p. 6 (La. 1/14/03), 838 So.2d 729, 739, wherein the Court recognized that “[wjhen a defendant exercises his privilege against self-incrimination the validity of any subsequent waiver depends upon whether police have “scrupulously honored” his right to remain silent.” (citing Michigan v. Mosley, 423 U.S. 96, 102, 96 S.Ct. 321, 46 L.Ed.2d 313 (1975). “Whether police have „scrupulously honored’ an accused’s right to silence is determined on a case-by-case basis under the totality of the circumstances.” Taylor, 01-1638, pp. 6-7, 838 So.2d at 739. Our review of the recording in its entirety does not persuade this |nCourt that Ki-nard categorically exercised his right to remain silent. He indicates that he is not going to continue speaking, but he none *116 theless continues to speak. He does not ask for an attorney and does not unequivocally state that he will not answer any more questions. We thus find that this argument lacks merit.
CONCLUSION:
For the foregoing reasons, we find that the trial court erred in granting the motion to quash. We further find that the trial court was not manifestly erroneous in suppressing the January 2, 2016 statement; however, we find the trial court erred in suppressing the January 11, 2016 statement. Accordingly, this matter is remanded for further proceedings in accordance with this opinion.
MOTION TO QUASH REVERSED; WRIT GRANTED IN PART, DENIED IN PART

. Only two interviews are the subject of these proceedings.

. The Brown court noted that "an extrajudicial confession does not warrant a conviction unless it is corroborated by independent evidence of the corpus delicti."